STATE of Missouri,
Plaintiff-Respondent,

v.

Ricky JONES, Defendant-Appellant.

No. 38732.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 27, 1977.

James B. Ashwell, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted of escaping before conviction in violation of § 557.390 R.S.Mo.1969; the sentence was two years imprisonment. Two points are raised upon appeal: (1) that the trial court erred in requiring two defense witnesses to appear before the jury in leg shackles; and, (2) that the trial court erred in failing to give prompt effect to writs of habeas corpus ad testificandum issued for two defense witnesses. We affirm the judgment.

Defendant was being held in custody on a conviction for armed robbery and a charge of assault. On June 25, 1974, he and at least four other persons were confined in the security section of Homer G. Phillips Hospital in St. Louis. On the day of the escape, a laboratory technician intending to draw a blood sample from a prisoner entered the ward with Deputy Sheriff Earl Robertson. As the technician was procuring the sample, Bernard Meeks, one of the prisoners, attacked Robertson with a bed post and beat him severely. Meeks freed himself from his bed shackles, utilizing a pair of pliers, and continued to pummel Robertson into unconsciousness. Another sheriff's deputy, Arnold Roberts, responded to the commotion, but Meeks overpowered him and took his gun. Meeks then freed the defendant and another prisoner, Eddie Fleming, and all three left the confinement of the hospital. Defendant was captured in the basement of his mother's house on October 6, 1974, 42 days after the breakout. Fleming surrendered to East St. Louis police 40 days after the escape. Meeks escaped to Virginia, where he was ultimately

convicted of 9 or 10 crimes, which according to Meeks, included abduction, assault, robbery and attempted escape. For the Virginia crimes, Meeks received a total of 125 years in sentences to be served concurrently for 50 years. He subsequently escaped from Virginia authorities and at the time of trial was serving a 15 year sentence in the Missouri penitentiary for armed robbery.

Defendant was charged in three counts: with escape before conviction; with assault with malice aforethought by reason of the attack on Deputy Robertson; with assault with malice aforethought by reason of attack on Deputy Roberts. The jury found defendant guilty of the escape and acquitted him on the two assault charges.

At trial, Deputy Robertson testified that both Meeks and defendant assaulted him. The laboratory technician, however, could not identify who had assaulted Robertson. Deputy Roberts testified that he was attacked only by Meeks, who took his gun; that as soon as the gun was taken, defendant, Meeks and Fleming ran out of the ward and jumped out a window to complete their escape. There was no evidence that defendant assaulted Roberts.

Defendant, Meeks and Fleming each testified that Meeks assaulted Robertson by beating him with a bed post and that defendant took no part in the assault.

With regard to the escape, Fleming testified that both he and defendant were forced at gunpoint by Meeks to leave the hospital prison ward. There was no assertion, however, that there were any restraints on either man after they had left the hospital ground. The only testimony from defendant on his direct examination regarding his escape was as follows:

"Q. Who released Earl Fleming?

"A. [Defendant] Bernard Meeks.

"Q. And how did you gain your freedom?

"A. Bernard Meeks."

Meeks, in his direct testimony, stated only that he had "released" defendant. On cross-examination, Meeks related the following:

"A. Ricky Jones [defendant], he didn't want to go, and I said, 'Well, when the police come down here they're going to take it out on all of you, because the guard was beaten up,' and I told them everyone down there, you know, they would get in trouble for it and finally I talked them into it, you know.

"Q. [prosecutor] When you finally talked them into it or he finally agreed with you, was that before you took the shackles off or after?

"A. It was before. He didn't want me to take them off.

"Q. Then he agreed to go with you?

"A. In a way he did not agree, I told him what the police might do to him; I guess he got a little scared."

The jury accepted defendant's and defendant's witnesses' version of the assault on Robertson and Roberts, acquitting him on both assault charges. The jury, however, found defendant guilty of escape before conviction.

 On appeal, defendant contends that it was error to have required his two witnesses—Meeks and Fleming—to remain shackled during the trial. He argues that he was thereby denied a fair trial. At trial, defendant's counsel objected to the shackles on Meeks and Fleming, but the trial court without comment, overruled the objection. Defendant correctly points out that an accused has the right to appear before the jury free of shackles unless good reason, based on his misconduct or exceptional circumstances, dictate that restraints are needed. *State v. Wendel*, 532 S.W.2d 838 (Mo.App.1975); *State v. Kirksey*, 528 S.W.2d 536 (Mo.App.1975). It is, of course, within the trial court's considerable discretion to determine the procedures and restraints essential to maintain order within the courtroom. *State v. Borman*, 529 S.W.2d 192 (Mo.App.1975): *Bibbs v. State*, 504 S.W.2d 319 (Mo.App.1973), cert. denied 419 U.S. 852, 95 S.Ct. 95, 42 L.Ed.2d 84 (1974). We reach back to *State v. Rudolph*,

187 Mo. 67, 85 S.W. 584 (1905), to find that the standards governing the propriety of the accused or his witnesses to be compelled to appear in court restrained in shackles are apparently the same. Hence, some "good reason" must exist and should be expressed by the trial court before a defendant's witnesses are required to appear before a jury in chains or shackles.

▪ In this case, however, defendant felt no sting of prejudice even though his witnesses, Meeks and Fleming, appeared in shackles. The only real conflict regarding the charges against the defendant related to his alleged assault of Robertson and Roberts. There was no evidence of assault against Roberts, but Robertson implicated defendant in his assault. Fleming and Meeks contradicted Robertson, and the jury believed them despite the shackles. Thus, no prejudicial error occurred as a result of the trial court's overruling defendant's objections to his witnesses' shackles.

Although Fleming indicated that he and defendant were forced by Meeks at gun point to flee the hospital—apparently in justification for their flight—Meeks' testimony was the opposite. And, of course, Meeks and Fleming were testifying under the same shackle handicap, so defendant could not have been prejudiced by the fact that Fleming was in chains when the jury was considering the contradictory testimony of Meeks, who was also in chains. Further, the crime of escape is a continuing offense. See *State v. Milentz*, 547 S.W.2d 164 (Mo.App.1977). Therefore, even though defendant may have been forced to leave the hospital, the record is clear that there was nothing preventing his return before his capture, 42 days after the escape. Again, there was no prejudice to defendant through his shackled witnesses' testimony regarding his escape conviction.

▪ Defendant's other point relates to a colloquy which occurred at the end of the State's case. The gravamen of the complaint is that the court ordered the defense to proceed at a time when defense witnesses were unavailable, thereby causing the defense to be embarrassed before the jury. The sequence of events as revealed in the record differs from the situation as represented in defendant's argument and shows no action of the court which could be deemed improper. Meeks and Fleming were penitentiary prisoners who had to be brought to court by means of writs of habeas corpus ad testificandum. The trial began on a Monday, and defense counsel sought the writs late the previous Friday afternoon. Unable to find the trial judge at that time, counsel obtained the writs from another circuit court judge. The writs were not placed in the court file, and it is apparent that the trial judge did not learn of them until he was shown copies at the trial, the time when defendant complains that the witnesses were not produced. As soon as the judge actually saw copies of the writs, he called a recess, and when the trial resumed that afternoon the writs had been executed and the witnesses were present. Clearly there was no impropriety in the trial court's action. Prejudice to defendant, if any, was not sufficient to call for the drastic action of mistrial; therefore, the failure of the trial court to declare a mistrial under the circumstances here did not constitute an abuse of discretion. See *State v. Porter*, 538 S.W.2d 888 (Mo.App. 1976).

Judgment affirmed.

KELLY, P. J., and WEIER, J., concur.