THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICKEY MYERS, Defendant-Appellant.

Fourth District   No 4—88—0568

Opinion filed June 21, 1989.

LUND, J., specially concurring.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial in the circuit court of Livingston County, the defendant, Mickey Myers, was found guilty of aggravated battery in that he knowingly or intentionally caused bodily harm to a correctional institution employee. (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6).) He was sentenced to a term of eight years in the Department of Corrections consecutive to his current sentence.

The defendant appeals his conviction on the sole ground he was denied a fair trial due to the shackling of his key witness. We affirm.

On October 14, 1987, Terry Williams, a counselor at Pontiac Correctional Center, was scalded with water while walking past a row of cells in a segregation unit. Williams received first and second degree burns on areas of his head, face, and neck.

At trial Williams testified he knew the liquid came from the defendant's cell because it is directly in front of a guard tower and because as he walks down the cell row he glances at each cell and the number above it. Williams also testified that just before getting hit with the substance he saw the defendant standing in the middle of his cell holding a bowl-container.

Other evidence from the prosecution at trial consisted of (1) objects found in the defendant's cell: a bowl still wet to the touch, a pair of gloves, and an extension cord with the end stripped exposing bare wires, generally referred to as a "stinger" used to heat liquid; (2) corroboration of the testimony of Williams and a corrections officer (Officer Munson), in that the floor around the defendant's cell was wet after the incident; and (3) testimony by Munson the defendant "admitted having done it."

The defense presented one witness, James Allen, another inmate at Pontiac Correctional Center. The circuit court ordered Allen shackled by one hand to a waist-type device he was wearing. Before Allen was allowed to testify, the defense objected to his being shackled. The court allowed the shackles, holding, "I think everyone knows that he is incarcerated in the Department of Corrections, and I just can't imagine any possible prejudice." Allen was brought into and taken out of the courtroom *out* of the presence of the jury.

Allen testified he was housed in the cell next to the defendant at the time of the incident. Allen stated the defendant could not have thrown the liquid as the incident occurred three or four cells down the

gallery and he and the defendant were talking at the time Williams was scalded. On cross-examination, Allen testified his adult convictions consisted of robbery, kidnapping, rape, and murder.

Just prior to the sentencing hearing, the court found the defendant was not prejudiced by the shackling of Allen and denied the defendant's motion for a new trial. Addressing the defendant's arguments at this time, the court held:

> "I am not aware of any way the jury was informed or would have known he was shackled. I don't think the jury was aware of the fact that he was shackled unless he would have shown them that. Because I think the shackling there is underneath the table in such a way the jury would not see it."

On appeal, the defendant argues the shackling affected the credibility of the testimony of his key witness thus denying him a fair trial. In response, the State argues the shackling did not affect the credibility of the witness' testimony.

█ Before the issue of shackling as it might affect credibility can arise, there must be evidence the jury *knew* the witness was shackled. Here, the record contains no indication the jury was aware the witness was shackled. The trial court described the restraint as a waist-type device with one hand attached to the witness stand underneath a table, and stated it did not think the jury was aware of the shackles.

█ The defendant does not argue the shackles were visible, only the trial court erred in shackling Allen. It is reasonable to infer the defendant's failure to comment on the visibility of the shackles suggests they were not openly visible. For these reasons we are unable to determine if any member of the jury saw the shackles. Absent such a showing, there is no issue to consider. Further, even if the shackles were visible to one or more members of the jury, there is no showing of prejudice.

Illinois courts have been consistent with the issue of shackling, following the principle laid down in *Illinois v. Allen* (1970), 397 U.S. 337, 348, 25 L. Ed. 2d 353, 361, 90 S. Ct. 1057, 1063, which holds a trial judge has wide discretion in maintaining the security of his or her courtroom. "[A] State witness, like a defendant, may be shackled for proper reasons when he appears in court." *People v. Sullivan* (1977), 48 Ill. App. 3d 787, 792, 362 N.E.2d 1382, 1386.

In *People v. Robinson* (1981), 92 Ill. App. 3d 972, 416 N.E.2d 793, inmate witnesses for the defendant were ordered shackled before a jury. The court in *Robinson* held "[t]he fact that they were shackled was merely another indication of that residency *** [and] could not have detracted from the fairness of the trial." (*Robinson*, 92 Ill. App.

3d at 974, 416 N.E.2d at 796.) Where inmate witnesses were seen as being escape risks, Federal courts have allowed shackling in front of juries. *United States v. Roustio* (7th Cir. 1972), 455 F.2d 366; *United States v. Garcia* (7th Cir. 1980), 625 F.2d 162.

In a case very similar to this one, the Seventh Circuit ruled "the shackling of witnesses is an unfortunate and undesirable practice which should be employed only in cases of extreme need." (*United States v. Esquer* (7th Cir. 1972), 459 F.2d 431, 433.) However, the *Esquer* court found the shackling of the witness not to be reversible error. "In such a situation, without some showing of actual prejudice, the conviction must be allowed to stand." *Esquer*, 459 F.2d at 433.

The circuit court in Livingston County gave no indication as to why Allen was ordered shackled other than he was an inmate. The court also did not state for the record whether it felt Allen posed any type of threat to the peace and dignity of the courtroom. While it would be preferable for the court to give reasons for shackling, there was no error here for two reasons. First, there is no showing the jury was aware of the shackling. Second, the defendant has made no showing of actual prejudice.

Accordingly, the judgment of the circuit court of Livingston County is affirmed.

Affirmed.

SPITZ, J., concurs.

JUSTICE LUND, specially concurring:

Defendant was an inmate of the Pontiac Correctional Center and was charged with scalding a correctional officer. Defendant's witness was a fellow inmate, serving time, by his admission, for robbery, kidnapping, rape, and murder. The jury, the court staff, the attorneys, and the judge are entitled to protection. It would be a foolish trial judge who would order the shackles removed. Of course, an alternative might be to fill the courtroom with SWAT team members. When trying cases of this type, I find no necessity for a judicial statement justifying the restraints.