GAUDIN, Judge.
Timothy Joseph was convicted of aggravated burglary (LSA-R.S. 14:60) and attempted forcible rape (LSA-R.S. 14:42.1) by a jury in the 40th Judicial District Court. He was sentenced to a total of 52 years at hard labor after being adjudicated a third habitual offender.
On appeal, Joseph assigns these district court errors:
(1) the trial judge erred in removing a witness during cross-examination,
(2) the trial judge also erred in permitting a defense witness to testify in his prison uniform while handcuffed and in leg shackles, and
(3) the evidence was insufficient to support a conviction.
For the following reasons, we affirm Joseph’s conviction. These crimes were committed on September 17, 1990 in St. John the Baptist Parish. The victim identified Joseph as the man who, without authorization, entered her home and attempted to rape her. Joseph struck the victim, inflicting a head injury, and took several items of jewelry, including her son’s high school graduation ring.
Detective Robert Hay investigated the crimes. The victim described her attacker as a young black man of medium complexion, weighing 135-150 pounds and having a small gold tooth in the front of his mouth. Hay testified that later he received information that a man identified as Robert Williams was in possession of the stolen graduation ring. When questioned, Williams said he had received the ring from Joseph.
In efforts to apprehend Joseph following issuance of an arrest warrant, police officers paid Julius Banks a $100.00 fee for his assistance. Banks lured Joseph to a local park but appellant fled when he saw policemen. Joseph was arrested approximately five hours later.
ASSIGNMENT NO. 1
During the trial, when Hay was being cross-examined, this exchange between the witness, defense counsel and thé trial judge took place:
Q. Julis Banks agreed to cooperate with you to bring Timothy Joseph to Regala Park; is that correct?
A. He had nothing to conceal.
Q. That is not my question. My question is did he not agree to cooperate and bring Timothy Joseph to Regala Park?
A. He agreed to deliver him there and bring him there in his vehicle yeah.
Q. When did you first speak with Julis Banks in reference to getting my client to Regala Park?
A. It was in the earlier morning hours of the 21st.
Q. How early?
A. I don’t know. It was in the a.m. hours — I would say between five and seven a.m.
Q. Was this at Mr. Banks residence you went and spoke with him?
A. Yes.
Q. You always make house calls on people between five and seven a.m. in the morning?
BY MS. GRAUGNARD:
Objecting, this is totally irrelevant as to the time.
BY THE COURT:
I can’t say that. I will overrule the objection.
BY MR. LEVENSTEIN:
Thank you.
*1133 A. Counselor, I am a criminal investigator we don’t sell Avon. We go when we feel we have a lead, we go. We don’t sit on it.
Q. Did you promise or offer anything to Julis Banks in return for his cooperation?
A. No.
Q. He did it out of the goodness of his heart?
BY MS. GRAUGNARD:
Objection, Your Honor.
BY THE COURT:
Objection sustained.
BY MR. LEVENSTEIN:
Q. If you didn’t promise anything detective did anybody else to your knowledge promise anything to Julis Banks?
A. The only other person present was investigator Jones and neither one of us are in a position to promise anybody anything for any reason.
Q. Detective Hay, did you not give Julis Banks one hundred dollars if he would get Timothy Joseph to go to Regala Park?
A. I don’t know if that’s the specific amount of money that was paid.
Q. But he was paid money to get my client to Regala Park; isn’t that correct, yes or no detective?
A. Yes.
Q. Was he not promised money — he was promised something and given something to get my client to Regala Park, isn’t that correct, detective?
A. No.
Q. As you put it between five and seven a.m. you went to his house. When did you give him the money?
A. I don’t know.
Q. You don’t know. Did you give him the money when you went to his house?
BY THE WITNESS:
Your Honor, I find myself in uncomfortable territory, and unfamiliar territory right now. Can we—
BY THE COURT:
We will have a short recess if you need to confer with the state.
(SHORT RECESS)
BY MR. LEVENSTEIN:
I object to the district attorney’s office coaching it’s witness.
BY THE COURT:
The objection is noted.
BY MR. LEVENSTEIN:
Can we get the district attorney away from the witness — Your Honor, I am very concerned at that point we are in the middle of cross examination and we are at a critical point.
BY THE COURT:
I am going to ask the jury to step outside.
(JURY OUT)
BY THE COURT:
For the record, let the record reflect the jury is outside the district attorney was advised in the presence of defense counsel that the witness would be instructed to answer the questions and that is what they were instructing their witness.
BY MR. LEVENSTEIN:
I apologize, Your Honor.
BY THE COURT:
Okay.
Apparently, Hay was reluctant to testify about the fact that Banks was paid for his help. During the brief interruption, Hay was told to answer all questions straightforwardly. Defendant’s right to cross-examine was not impinged as Hay was fully questioned about Banks’ cooperation and the payment to him. The slight pause in cross-examination was not prejudicial; in fact, it helped the cross-examiner as the detective was advised to appropriately respond to the questions.
ASSIGNMENT NO. 2
Here, appellant contends that it was reversible error to permit a defense witness to testify while in a prison uniform, in handcuffs and in leg shackles. In the primary case cited by Joseph, State v. Spellman, 562 So.2d 455 (La.1990), a reversal was in order because the defendant was forced to testify in prison attire.
*1134 Williams, the defense witness for Joseph, however, was not the defendant. Williams was asked questions that revealed that he was a jail inmate. There is no showing that Joseph’s presumption of innocence was challenged by Williams’ attire and there is no suggestion, from the record, that Joseph 'was prejudiced. The fact is that Williams was incarcerated at the time and that he testified as a prisoner.
We are unaware of any reversal because a witness testified in a prison uniform, particularly if the defense was not limited in questioning the witness as to the reasons for the incarceration.
ASSIGNMENT NO. 3
In this assignment of error, Joseph argues that he was not convicted beyond a reasonable doubt.
The evidence against Joseph was strong. He had a small gold tooth in the front of his mouth and he was positively identified by the victim. His fingerprints were on a piece of a crystal candy dish he used to hit the victim with. Further, two police officers testified that after Joseph was apprehended and given his Miranda[1] rights, he said that he committed the burglary but that he did not rape the victim. Still further, Joseph had in his possession jewelry stolen from the victim’s house.
Joseph produced several alibi witnesses but their testimony was rejected by the jury. It is not our function to reweigh the credibility of witnesses, especially where there is very persuasive evidence establishing guilt beyond a reasonable doubt. See State v. Matthews, 450 So.2d 644 (La.1984).
Appellant does not say that his sentence was excessive. We affirm his conviction.
AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).