I2CHIASSON, Judge, Pro Tempore.
Defendant, Vernon T. Washington, appeals his conviction and sentence following a trial by jury. The defendant was charged by bill of information filed on November 14, 1994 with one count of attempted first degree murder in violation of LSA-R.S. 14:27 and 14:30 (count one), one count of aggravated burglary in violation of LSA-R.S. 14:60 (count two), one count of second degree kid-naping in violation of LSA-R.S. 14:44.1 (count three), two counts of carjacking in violation of LSA-R.S. 14:64.2 (counts four and five) and one count of possession of cocaine with intent to distribute in violation of LSA-R.S. 40:967(A) (count six). Following his not guilty plea, defendant’s motion to suppress identification was denied and he was tried on the charges of aggravated burglary, second degree kidnaping and one count of carjacking (counts two, three and five). The jury returned with a verdict of guilty as charged to each of the three counts. Thereafter, on June 23, 1995, the trial court sentenced the defendant to 30 years at hard labor on the aggravated burglary conviction (count two), 40 years at hard labor of which 10 would be served without benefit of parole, probation or suspension of sentence on the second degree kidnaping conviction (count three) and 20 years at hard labor without benefit of parole, probation or suspension of sentence on the carjacking conviction (count five). The court ordered the sentences to run concurrently with each other and the court gave the defendant credit for time served.
30n appeal, defendant contends the trial court committed the following errors:
1. The trial court erred in denying defendant’s motion to suppress identification.
2. The trial court erred in denying the defense request to allow incarcerated witnesses to appear without handcuffs nor leg shackles.
3. Defendant’s convictions under LSA-R.S. 14:44 and LSA-R.S. 14:64.2 and LSA-R.S. 14:60 constitute a violation of his constitutional protection against double jeopardy.
4. The trial court erred in imposing an excessive sentence.
5. Any and all errors patent on the face of the record.

FACTS

On the evening of August 6, 1994, Obi Wokedi was visiting his girlfriend, Judy Hebert, at her apartment on the Westbank of Jefferson Parish. Wokedi’s sister, Rosemary Alinta, and her two children ages one month and five years old had accompanied him on his visit. Hebert’s two children, ages four and seven, were also present.
Subsequently, Wokedi and Alinta left to go to the French Quarter around 10:00 p.m. On their way, they decided not to go “because it was very late and she [Alinta] was kind of concerned about going out that late.” Because they were going to pick up a friend, they stopped by a pay telephone located between Lapalco and Manhattan to call and inform him of their change of plans. After stopping, Wokedi exited his car while Alinta remained seated inside. While Wokedi was using the telephone, the defendant and a male companion approached from separate directions. Both the defendant and his companion were armed with guns and they instructed Wokedi to return to his car and to sit in the back seat. After Wokedi complied with their demands, the defendant’s companion sat in the back seat with Wokedi and the *1258 defendant sat in the driver’s seat next to Alinta. The defendant then drove away from the scene.
While driving on the Westbank, the defendant and his companion asked Wokedi where he lived. When Wokedi replied that he lived in New Orleans East, the defendant stated “I’m not stupid, I’m not going across the toll bridge, who did you come to see out |4here.” Thereafter, the defendant and his companion repeatedly threatened to kill Wokedi and Alinta unless he “took” them to Hebert’s apartment.
Upon arriving at Hebert’s apartment, Wokedi, Alinta, the defendant and his companion all exited the car. With a gun pressed against his back, Wokedi knocked on the door as instructed. Hebert looked out and saw that Wokedi “was standing in the peephole.” However, when she opened the door, she saw the defendant and his companion. The defendant had a gun pointed at Wokedi and his companion had a gun pointed at Alinta. After everyone entered Hebert’s apartment, the defendant, who continued to display his gun, forced Hebert and Alinta to sit on the sofa. The defendant asked Hebert if she had any money, but she replied that she did not have any. Within five to ten minutes, the defendant “brought” Wokedi into Hebert’s bedroom, placed him on the floor and covered him with a quilt. The defendant then “brought” Hebert and Alinta to the bathroom, broke the light bulb with his gun and left them there. The four children who were playing in a second bedroom were not disturbed.
Before leaving Hebert’s apartment, the defendant and his companion instructed Wokedi, Alinta and Hebert not to report the incident to the police. Approximately 30 minutes later, Hebert and Alinta exited the bathroom and Hebert walked in her bedroom to assist Wokedi. Because the telephones were missing, they had to go to a neighbor’s apartment to call the police. When they exited the apartment, they noticed that Wokedi’s and Hebert’s cars were missing. Subsequently, Hebert discovered that her YCR and some clothes were also missing.

ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred in denying defendant’s motion to suppress identification.
The defendant contends that the trial court erred in denying his motion to suppress identification. In support of this contention, the defendant argues that initial photographic identification of the defendant was imper-missibly suggestive and that such a suggestive identification procedure resulted in a substantial likelihood of misidentification.
liiWithin hours of the incident, Detective West arrived on the scene and showed two photographs to Wokedi, Alinta and Hebert. One of the photographs pictured the defendant and the other pictured the defendant and an unknown male. Wokedi, Alinta and Hebert all identified the defendant as one of the perpetrators.
Subsequently, on August 10, 1994, Detective West presented a photographic line-up to Wokedi and Hebert and they again identified the defendant. Additionally, both Wokedi and Hebert positively identified the defendant at trial.[1]
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), rehearing denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986). State v. Barnes, 592 So.2d 1352 (La.App. 5th Cir.1991).
When there is a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. These factors were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). They include: (1) the opportunity of the witness to view the criminal at the time of the *1259 crime; (2) the witness’s degree of attention; (3)the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. State v. Martin, 595 So.2d 592 (La.1992).
Even assuming that the identification procedure in this case was suggestive, the application of the Manson factors leads to the conclusion that there was no substantial likelihood of misidentification. Wokedi and Hebert had ample opportunity to view the defendant while in Hebert’s well-lit apartment and Wokedi also viewed the defendant at the lepay telephone and while traveling to Hebert’s apartment. Both Wokedi and Hebert paid close attention to the defendant considering their testimony that they concentrated on the defendant’s facial features. Their level of certainty was high in that they immediately and positively identified the defendant as one of the perpetrators. Additionally, because the identification occurred within hours of the incident, the amount of time which passed between the incident and the identification was nominal.
Considering the totality of the circumstances, it appears that the photographic identification, even if suggestive, nonetheless produced a reliable identification. Therefore, the trial court did not err in denying the motion to suppress identification.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO

The trial court erred in denying the defense request to allow incarcerated witnesses to appear without handcuffs nor leg shackles.
The defendant contends that the trial court erred in refusing to allow an incarcerated defense alibi witness to testify without restraints. Specifically, the defendant argues that by restraining the witness, his credibility was adversely affected thereby prejudicing the defendant.
At trial, the defense presented two alibi witnesses who were incarcerated in Jefferson Parish Correctional Center on murder charges. The court allowed both witnesses to testify in their own clothing. The court also allowed one of the witnesses, Edward Harris, to testify without restraints.
The second alibi witness, Edward Bell, did testify with restraints. The witness admitted that he had a 1994 conviction of simple robbery and the State introduced certified copies of a 1994 conviction of purse snatching, a 1992 conviction of attempted theft and a 1992 conviction of theft.
The defendant does not cite any cases, and we are unaware of any cases, where a reversal was warranted for prejudice to the defendant where an alibi witness testified in prison attire and/or shackled. The only two cases which we could find where this issue Uwas assigned as error were affirmed because the defendant did not show he was prejudiced. See State v. Joseph, 613 So.2d 1131 (La.App. 5th Cir.1993); State v. Miller, 449 So.2d 1361 (La.App. 1st Cir.1984).
Here, the defendant has made no showing that the use of restraints on Bell adversely affected his credibility nor has the defendant made a showing that the jury was prejudi-cially influenced against the defendant as a result of the use of restraints on Bell.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE

Defendant’s convictions under LSA-R.S. 14:44 and LSA-R.S. 14:64.2 and LSA-R.S. 14:60 constitute a violation of his constitutional protection against double jeopardy.
The defendant contends that the convictions of carjacking, second degree kidnap-ing and aggravated burglary constituted a violation of double jeopardy. In support of this contention, the defendant argues that “[h]is conviction for kidnaping under 14:44.1(A)(5) was for conduct which formed the basis of his convictions for the carjacking and aggravated burglary.”
Both the United States and Louisiana Constitutions prohibit placing a person twice in jeopardy of life or limb for the same offense. U.S. ConstAmend. V; La.Const. Art. 1, Sec. 15 (1974). Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but *1260 also from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983).
In determining whether or not the double jeopardy prohibition has been violated, the Louisiana Supreme Court has recognized two different tests, i.e., the test established in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and the “same evidence” test. Nevertheless, in recent years, the Louisiana Supreme Court has principally relied on the “same evidence” test when evaluating double jeopardy claims. State v. Miller, 571 So.2d 603 (La.1990).
The test established in Blockburger is:
|8The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not
[[Image here]]
Blockburger v. United States, 284 U.S. at 304, 52 S.Ct. at 182.
The “same evidence” test was explained by the Louisiana Supreme Court in State v. Steele, 387 So.2d 1175, 1177 (La.1980) as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial, (citation omitted)
The “same evidence test” is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. State v. Nichols, 337 So.2d 1074 (La.1976). Louisiana has not adopted a “same transaction” test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed during one sequential, continuing course of conduct. City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975).
In the instant case, the defendant was convicted of aggravated burglary in violation of LSA-R.S. 14:60(1), second degree kidnap-ing in violation of LSA-R.S. 14:44.1(A)(5)(B)(1) and carjacking in violation of LSA-R.S. 14:64.2. Those statutes provide as follows:
§ 60. Aggravated burglary
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon....
§ 44.1. Second degree Kidnaping
A. Second degree kidnaping is the doing of any of the acts listed in Subsection B wherein the victim is:
⅜ # ⅝: # ⅜ *
(5) Imprisoned or kidnaped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
^ * ‡ ‡ ^
B. For purposes of this Section, kidnap-ing is:
(1) The forcible seizing and carrying of any person from one place to another....
§ 64.2. Caijacking
A. Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation.
In applying either the Blockburger or “same evidence” test to the facts in this case, no violation of double jeopardy exists. Under the Blockburger test, the issue is whether each crime requires proof of an additional fact which the others do not. Here the aggravated burglary requires proof of an un *1261 authorized entry of an inhabited dwelling with intent to commit a felony or theft therein, whereas second degree kidnapping and carjacking do not. Likewise, second degree kidnaping requires proof of the forcible seizing and carrying of a person from one place to another, whereas aggravated burglary and carjacking do not. Finally, carjacking requires proof of the intentional taking of a vehicle in the presence of the owner, passenger or any person in lawful possession by the use of force or intimidation, whereas aggravated burglary and second degree kidnaping do not.
Under the “same evidence” test, the issue is whether the evidence required to support a conviction of one crime would also have supported a conviction of the other crime. The carjacking occurred when the defendant and his companion entered Wokedi’s car in the presence of Wokedi while displaying their guns. The second degree kidnaping occurred when the defendant and his companion, while armed, ordered the defendant into the back seat of his car and then transported him to Hebert’s apartment. The aggravated burglary occurred when the armed defendant and his companion entered Hebert’s apartment with intent to commit a theft. Therefore, the evidence showed that three separate offenses occurred each of which could have been proven without any evidence as to the others.
This assignment lacks merit.
11 /ASSIGNMENT OF ERROR NUMBER FOUR
The trial court erred in imposing an excessive sentence.
The defendant contends that the trial court imposed an excessive sentence. Specifically, the defendant argues that the sentence “when measured against precedents and the recommendations” of the sentencing guidelines is excessive.
The trial court sentenced the defendant to the maximum sentences of 40, 30 and 20 years at hard labor for his convictions of aggravated burglary, second degree kidnap-ing and carjacking, respectively. The court also ordered the sentences to run concurrently. In imposing the sentences, the trial court gave the following reasons:
THE COURT:
Mr. Washington, the matter set today is a sentencing of Vernon Washington, the case is 94-6342. Following the jury trial the defendant was convicted of one count of aggravated burglary, one count of second degree kidnaping and one count of car jacking. In determining the sentence to be levied the Court considered the Felony Sentencing Guidelines set out by the Louisiana Sentencing Commission. The Court is aware that the approximate range set out on the grid is 330 to 360 months [27½ to 30 years] a piece on count Nos. 2, 3 and 5. In determining the sentences to be levied in this case the Court has considered both aggravating and mitigating circumstances. The Court found the following aggravating circumstances to apply: The offender’s conduct during the commission of the offense manifested deliberate cruelty to the victim, the offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, age disability or ill health, the offender knowingly created a risk of death or great bodily harm to more than one person, the offender used threats of or actual violence in the commission of the offense, the offense resulted in an significant permanent injury to the victims and their families, the offender used a dangerous weapon in the commission of the offense, the offense involved multiple victims or incidents for which separate sentences have not been imposed, the offender used a firearm or other dangerous weapons while committing or attempting an offense which has as an element the use or threatened use of physical force against the person or property of another in which by its very nature involved a substantial risk that physical force may be used in the course of committing the offense. The Court found no mitigating circumstances to apply.
Following the imposition of the sentence, defense counsel who previously argued that the appropriate range of the sentencing *1262 guidelines was 210 to 240 months [17½ to 20 years], objected to the sentencing.[2]
lulnitially, it is noted that by Acts 1995, No. 942, effective August 15, 1995, the legislature repealed the sentencing guidelines and amended LSA-C.Cr.P. art. 894.1 to delete reference to those guidelines and to provide the sentencing guidelines now in effect. See State v. Guzman, 95-444 (La.App. 5 Cir. 11/15/95), 665 So.2d 512. As amended, LSA-C.Cr.P. art. 894.1 now requires the court to state for the record considerations taken into account and the factual basis for imposing sentence.
The defendant was sentenced before the effective date of Act No. 942; however, the court in State v. Lennon, 95-0402 (La.App. 4 Cir. 9/15/95), 661 So.2d 1047, stated:
Where a sentencing court articulates the basis for the sentence, it would be a waste of judicial resources to vacate the sentence for failure to consider the old Guidelines and remand for resentencing under the new scheme which no longer requires consideration of those Guidelines.
See also State v. Hilton 95-0586 (La.App. 4 Cir. 11/16/95), 665 So.2d 124 and State v. Robertson, 94-1379 (La.App. 1 Cir. 10/6/95), 671 So.2d 436.
In the instant case the trial court adequately stated the considerations taken into account and the factual basis for the sentences; thus there is no need to address the sentencing guidelines. Furthermore, the sentences do not appear to be constitutionally excessive.
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion to sentence within statutory limits. State v. Bradham, 94-71 (La.App. 5th Cir. 5/31/94), 638 So.2d 428.
li2The concurrent sentences of 40, 30 and 20 are not disproportionate to the offenses nor do they amount to a purposeless and needless infliction of pain and suffering. The sentences imposed amount to a total of 40 years as opposed to a potential sentencing exposure of 90 years. Furthermore, the multiple offenses committed by defendant demonstrate his propensity for criminal activity. Thus, we find the sentences imposed are not excessive.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE

Assigned as error are any and all errors patent on the face of the record.
For the purpose of error patent review the “record” in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence.. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
A review of the record reflects the following error:
At the time of sentencing, the trial court did not inform the defendant of the three-year prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8(C). However, failure to inform the defendant does not constitute grounds for reversing the sentence or remanding the case for resentencing. LSA-C.Cr.P. art. 921. Rather, the trial court is instructed to inform *1263 defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within twenty days of rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.

^CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of Vernon T. Washington. The trial court is instructed to send appropriate written notice to defendant within twenty days of rendition of this opinion and to file written proof in the record of the proceedings that the defendant received the notice.

AFFIRMED WITH INSTRUCTIONS.

. Alinta did not testify at the motion to suppress identification nor at trial.

. Although the defendant failed to file a written motion to reconsider sentence, defense counsel argued that the sentencing range was 210 to 240 months and orally objected to the sentencing at the time it was imposed. Such argument and objection appears to have satisfied the requirement of LSA-C.Cr.P. art. 881.1A(2), governing motions for reconsideration of sentence, that the defendant make known orally "at the time of sentencing ... the specific grounds on which the motion is based.” See State v. Aggison, 628 So.2d 1115 (La.1993).