543 S.E.2d 282

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**ALLAH JAMAAL W., Defendant Below, Appellant.**

No. 27770.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 2000.

Decided Dec. 1, 2000.

George V. Sitler, Public Defender's Office, Princeton, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Leah Perry Macia, Assistant Attorney General, Charleston, for the Appellee.

DAVIS, Justice:

Allah Jamaal W.,[1] appellant/respondent below (hereinafter referred to as "Allah"), filed this appeal from an order of the Circuit Court of Mercer County adjudicating him delinquent and committing him to the Industrial Home for Youth for a period of one year. In this appeal, Allah contends that the trial court committed error by requiring his incarcerated witnesses to wear shackles and prison clothing while testifying at his trial.

---

**1.** As is our traditional practice, we avoid using the last name of minors in cases involving sensitive facts. *See State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994); *State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.*, 183 W.Va. 220, 395 S.E.2d 220 (1990).

The State has confessed error. However, the State urges this Court to find the error harmless. After reviewing the briefs, appellate record and listening to the oral arguments of the parties, we find the error complained of was not harmless. The conviction and sentence are reversed. The case is remanded for a new trial.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of November 15, 1998, Bluefield police Officer Robert Mason was talking with two people near a bar called Bo's Nightclub.[2] Allah walked past Officer Mason and the two exchanged hostile words.[3] The testimony was conflicting as to what happened after the initial exchange of words between Allah and Officer Mason.[4] It is clear that a struggle ensued which resulted in Allah being taken into custody and a juvenile petition being filed charging Allah with striking Officer Mason in the throat and forehead.[5]

Allah demanded a trial by jury. Prior to trial, Allah filed a motion asking the court to permit three of his witnesses, who were incarcerated, to testify without shackles and wearing nonprison clothing. The trial court summarily denied the motion, and Allah's three witnesses testified while shackled and wearing prison clothes. The jury returned a verdict finding Allah guilty of making unlawful contact with Officer Mason. The court subsequently committed Allah to the Industrial Home for Youth for a period of one year. It is from this conviction that Allah now appeals.

## II.

## STANDARD OF REVIEW

■ "A delinquent juvenile is 'a juvenile who has been adjudicated as one who com-

mits an act which would be a crime under state law or a municipal ordinance if committed by an adult.'" *West Virginia Dept. of Military Affairs and Pub. Safety, Div. of Juvenile Servs. v. Berger*, 203 W.Va. 468, 470 n. 1, 508 S.E.2d 628, 630 n. 1 (1998) (quoting W. Va.Code § 49–1–4(8) (1997) (Supp.1997)). *Accord* W. Va.Code § 49–1–4(8) (1998) (Repl. Vol.1999). Rules of evidence and procedural rights applicable in adult criminal proceedings are applicable with equal force in juvenile adjudicatory proceedings. W. Va.Code §§ 49–5–2(j) and (k) (1998) (Repl.Vol.1999). *Accord* W. Va.Code § 49–5–2(j) and (k) (2000) (Supp.2000). Therefore, an adjudication of delinquency is subject to the same standards of review on appeal as is an adult criminal conviction. In the instant proceeding, the issue confronting this Court is whether it was error for the trial court to require Allah's witnesses to appear before the jury shackled and wearing prison garb.

■ Heretofore, this Court has not established a specific standard for our review of whether the trial court has committed such an error. Because our discussion of the appropriate standard involves a review of the same cases we rely on in deciding the specific issues raised in this case, we set forth the appropriate standard in the body of our discussion, rather than at this point, to avoid repetition. Nevertheless, we note that we have previously held that "[a] criminal defendant has no constitutional right to have his witnesses appear at trial without physical restraints or in civilian attire." Syl. pt. 3, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979). Consequently, "where a nonconstitutional error has been asserted, we have adopted the rather general rule that the case will not be reversed unless the error is prejudicial to the defendant."

---

**2.** It appears that several police officers were in the area due to recent late evening trouble.

**3.** Allah told Officer Mason not to try and stop his car when he's on the road. Officer Mason told Allah that he would be watching him and that if Allah did something wrong, he would stop Allah's car.

**4.** The record suggests that Officer Mason told Allah that he was not supposed to be out at that

time in the morning. It was around 2:30 am. The record is unclear as to whether Allah was violating a Bluefield juvenile curfew or whether he was violating a previously imposed juvenile probation.

**5.** Allah was 17 years old at the time of the incident.

*State v. Atkins,* 163 W.Va. 502, 510, 261 S.E.2d 55, 60 (1979) (citations omitted). *See also State v. Potter,* 197 W.Va. 734, 748, 478 S.E.2d 742, 756 (1996) ("Our cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict."). *Accord State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998); *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273 (1996); *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995); *State v. Young,* 185 W.Va. 327, 406 S.E.2d 758 (1991); *State v. Ferrell,* 184 W.Va. 123, 399 S.E.2d 834 (1990).

## III.

## DISCUSSION

■ In the case *sub judice* Allah filed a motion with the trial court seeking to have his three incarcerated witnesses testify at trial without shackles and wearing civilian clothing. The trial court summarily denied the motion. The State has confessed error in the trial court's decision to deny the motion.[6] However, the State contends that this Court should conclude that the lower court's decision was harmless.[7]

6. "Mere confession of error by the State, of course, does not dictate the hand of this Court nor the outcome of this case." *State v. Todd Andrew H.,* 196 W.Va. 615, 618 n. 6, 474 S.E.2d 545, 548 n. 6 (1996). *See also* Syl. pt. 8, *State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991) ("This Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred.").

7. The State's brief mentions, without argument, that Allah has served his one year sentence. This fact suggests that this case may be moot. We set out the critical factors for determining whether to address a moot issue in syllabus point 1 of *Israel, by Israel v. West Virginia Secondary Sch. Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989):

Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of

We begin our analysis by reviewing the seminal case of *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979). *McMannis* was presented to the Court as an original habeas corpus proceeding. The defendant in *McMannis* was convicted of second-degree sexual assault and sentenced to life imprisonment under the recidivist statute. One of the issues presented in the *McMannis* case concerned the defendant's argument that he had a constitutional right to have his witnesses appear at trial without physical restraints and in civilian attire.[8] This Court rejected the defendant's argument insofar as it was presented as a constitutional right. We held that "[a] criminal defendant has no constitutional right to have his witnesses appear at trial without physical restraints or in civilian attire." *McMannis,* 163 W.Va. at 139–140, 254 S.E.2d at 811.

Although *McMannis* declined to extend constitutional protection to the physical appearance of a defendant's witness, we did acknowledge that "there may be occasions when forcing the defendant's witnesses to testify in physical restraints [or prison attire] may create sufficient prejudice that reversible error will occur." *McMannis,* 163 W.Va. at 140, 254 S.E.2d at 811. We further suggested, *in dicta,* procedures that should be

the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

During oral argument, defense counsel indicated that the delinquency adjudication in this case could be used against Allah in a proceeding in Virginia. The record in this case does not disclose any facts regarding the nature of the Virginia matter, so we are not prepared to find that sufficient collateral consequences actually flow from the delinquency adjudication. However, we believe the issue of forcing a criminal defendant's witnesses to testify shackled and dressed in prison uniforms is of great public and legal concern and should be addressed by this Court for guidance to trial courts.

8. The defendant in *McMannis* also argued that he had a constitutional right not to be forced to wear prison clothing himself during his trial. We agreed with the defendant and held in syllabus point 2 of *McMannis,* in part, that "[a] criminal defendant has the right under the Due Process Clause of our State and Federal Constitutions not to be forced to trial in identifiable prison attire."

followed when the issue of an incarcerated witness' attire or the use of physical restraints became an issue.[9] *Id.* at 139 n. 7, 254 S.E.2d at 810 n. 7.

With respect to an incarcerated witness' attire, we indicated in *McMannis* "that it is incumbent upon defense counsel, if he wishes to obtain prison witnesses, to make voluntary arrangements with the custodial authorities for them to appear in civilian attire. If a voluntary arrangement cannot be made, he should move the court for an order in advance of trial." 163 W.Va. at 137, 254 S.E.2d at 809. With respect to shackles, we indicated if a voluntary arrangement could not be made regarding the use of shackles, defense counsel should move the trial court for a hearing on the matter.[10] *Id.* at 139 n. 7, 254 S.E.2d at 810 n. 7.

In the instant proceeding Allah has asked that this Court elevate *McMannis'* dicta into law. We are inclined to do so. For reasons similar to those recognized in *McMannis,* courts in other jurisdictions have held that an incarcerated witness for the defendant should not be forced to testify in prison attire. *See Johnson v. Spalding,* 510 F.Supp. 164 (E.D.Wash.1981); *State v. Torres,* 57 Conn.App. 614, 749 A.2d 1210 (2000); *Mullins v. State,* 766 So.2d 1136 (Fla.Ct.App. 2000); *Thompson v. State,* 514 S.W.2d 275 (Tex.Crim.App.1974). Regardless of this general prohibition, courts have not overturned convictions on the sole basis that a witness for the defendant was forced to wear prison attire while testifying. *See United States v. Adams,* 1 F.3d 1566 (11th Cir.1993); *Johnson v. Spalding,* 510 F.Supp. 164 (E.D.Wash.1981); *State v. Yates,* 174 Conn. 16, 381 A.2d 536 (1977); *Tompkins v. State,* 386 So.2d 597 (Fla.App.1980); *State v. Marcelin,* 669 So.2d 497 (La.Ct.App. 4th Cir.

1996); *White v. State,* 105 Nev. 121, 771 P.2d 152 (1989).

Additionally, courts in other jurisdictions have also prohibited the arbitrary use of shackles on an incarcerated witness for the defendant during the witness' trial testimony. *See Harrell v. Israel,* 672 F.2d 632 (7th Cir. 1982); *Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir.1973); *Williams v. State,* 629 P.2d 54 (Alaska 1981); *People v. Valenzuela,* 151 Cal.App.3d 180, 198 Cal.Rptr. 469 (1984); *Robbins v. State,* 177 Ga.App. 547, 340 S.E.2d 206 (1986); *People v. Myers,* 185 Ill.App.3d 118, 133 Ill.Dec. 184, 540 N.E.2d 1050 (1989); *State v. Bradford,* 254 Kan. 133, 864 P.2d 680 (1993); *State v. Coursolle,* 255 Minn. 384, 97 N.W.2d 472 (1959); *State v. Jones,* 556 S.W.2d 736 (Mo.Ct.App.1977). The rule against arbitrarily shackling a defendant's witness was explained by the Sixth Circuit Court of Appeals as follows:

The general rule for shackling witnesses is that a defendant has a right to have his witnesses appear free of shackles, except in special circumstances where there is evident danger of escape or harm to individuals in the courtroom.... The reason underlying the rule is the inherent prejudice to the defendant since it is likely the jury will suspect the witness's credibility. The prejudice factor toward the defendant, although much less than the situation where the defendant is shackled, provides a valid point of comparison even though the shackled witness cases do not directly affect the presumption of innocence.

*Kennedy v. Cardwell,* 487 F.2d 101, 105 n. 5 (6th Cir.1973).

Furthermore, the American Bar Association (ABA) has taken the position that an incarcerated witness for the defendant should not be compelled to testify before a

---

9. Since the proceeding in *McMannis* was a habeas proceeding, we declined to make a nonconstitutional analysis of the issue.

10. We suggested trial courts should consider the following factors when making a determination of whether to require an incarcerated witness testify without shackles:

"(1) The seriousness of the present charge, (2) the person's character, (3) the person's past record, (4) past escapes by the person, (5) attempted escapes by the person, (6) evidence

the person is planning an escape, (7) threats of harm to others, (8) threats to cause disturbance, (9) evidence the person is bent upon self-destruction, (10) risk of mob violence, (11) risk of attempted revenge by victim's family, (12) other offenders still at large, ..." (Citations omitted)

*McMannis,* 163 W.Va. at 139 n. 7, 254 S.E.2d at 810 n. 7 (quoting A.B.A. Advisory Committee on the Criminal Trial, *Standards Relating to Trial by Jury* at 96 n. 9 (Approved Draft 1968)).

**6**

jury wearing prison attire or restraints. The ABA has promulgated the following standard for this issue:

> (b) The trial judge should not permit a ... witness to appear at trial in the distinctive attire of a prisoner unless specifically waived by the defendant.[11]

> (c) ... [W]itnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, the judge should enter into the record of the case the reasons therefor. Whenever physical restraint of a ... witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt.

III Standards for Criminal Justice, Standard 15–3.1 at 15–78 (2d ed.1986) (footnote added).[12]

■■■ In view of *McMannis* and other authorities, we hold as follows. The issue of whether a witness for the defendant should be physically restrained or required to wear prison attire while testifying before a jury is, in general, a matter within the sound discretion of the trial judge and will not be reversed absent a showing of an abuse of that discretion. The trial judge should not permit an incarcerated defense witness to appear at trial in the distinctive attire of a prisoner. However, the burden is upon the defendant to timely move that an incarcerated witness be permitted to testify at trial in civilian clothes.[13] If the trial judge denies the motion, the judge must set forth on the record the reasons for denying said motion. An incarcerated defense witness should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to prevent escape, provide safety, or maintain order in general.[14] The burden is upon the defendant to timely move that an incarcerated defense witness be permitted to testify at trial with-

**11.** Under the ABA's standard, if a defendant fails to timely object to a witness wearing prison attire, such failure is deemed a waiver of the right to have the witness wear civilian attire. *See, e.g., Cherry v. State,* 230 Ga.App. 443, 496 S.E.2d 764 (1998) (defendant failed to object to witness wearing prison attire); *State v. Abraham,* 338 N.C. 315, 451 S.E.2d 131 (1994) (defendant failed to object to witnesses wearing prison attire and shackles).

**12.** *See, e.g.,* North Carolina General Statutes § 15A–1031 (1977):

> A trial judge may order a defendant or witness subjected to physical restraint in the courtroom when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons. If the judge orders a defendant or witness restrained, he must:
> (1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained and his counsel, if any, the reasons for his action; and
> (2) Give the restrained person an opportunity to object; and
> (3) Unless the defendant or his attorney objects, instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt.
> If the restrained person controverts the stated reasons for restraint, the judge must conduct a hearing and make findings of fact.

*See also Harrell v. Israel,* 672 F.2d 632, 636 n. 4 (7th Cir.1982) ("Normally, where the use of

physical restraints is being considered, the trial court should conduct a hearing on the matter outside the presence of the jury and state for the record the reasons for such action. This will allow a reviewing court to determine more readily whether there was an abuse of discretion." (citation omitted)).

**13.** The defendant also has the burden of supplying civilian clothing for an incarcerated witness. In the *instant case, defense counsel indicated during oral argument that arrangements had been made with a local church to obtain clothing for Allah's three witnesses.

**14.** Courts that have found the use of restraints necessary for security reasons include: *Wilson v. McCarthy,* 770 F.2d 1482 (9th Cir.1985); *United States v. Fountain,* 768 F.2d 790 (7th Cir.1985); *Woods v. State,* 40 Ark.App. 204, 846 S.W.2d 186 (1993); *People v. Allen,* 42 Cal.3d 1222, 232 Cal.Rptr. 849, 729 P.2d 115 (1986); *State v. Mills,* 117 Idaho 534, 789 P.2d 530 (Ct.App. 1990); *People v. Robinson,* 92 Ill.App.3d 972, 48 Ill.Dec. 520, 416 N.E.2d 793 (1981); *Parker v. State,* 567 N.E.2d 105 (Ind.Ct.App.1991); *Commonwealth v. Brown,* 364 Mass. 471, 305 N.E.2d 830 (1973); *Commonwealth v. Ladetto,* 353 Mass. 746, 230 N.E.2d 914 (1967); *State v. O'Neal,* 718 S.W.2d 498 (Mo.1986); *State v. Cleveland,* 583 S.W.2d 263 (Mo.Ct.App.1979); *People v. LaBoy,* 91 A.D.2d 1102, 458 N.Y.S.2d 361 (1983); *DeLeon v. State,* 758 S.W.2d 621 (Tex.Crim.App. 1988); *Payne v. Commonwealth,* 233 Va. 460, 357 S.E.2d 500 (1987).

out physical restraints.[15] If the trial judge orders such restraint, the judge must enter into the record of the case the reasons therefor.[16] Whenever the wearing of prison attire or physical restraint of a defense witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such attire or restraint is not to be considered in assessing the evidence and determining guilt.[17]

In the instant proceeding, the State has conceded that the trial judge committed error in requiring Allah's witnesses to wear prison attire and be shackled while testifying. The State's confession of error is warranted. The record is clear that Allah's counsel timely motioned the trial judge to permit incarcerated defense witnesses to testify in civilian clothing and without shackles. The trial judge summarily denied the motion and failed to provide any relevant reason for the denial. As a result of the record being silent as to the trial court's decision to deny the motion, we find such denial was an abuse of discretion.[18]

The State contends that the error in this case was harmless. Therefore, the judgment should be affirmed.[19] The State submits that the error was harmless for the following reasons: (1) testimonial evidence informed the jury that the witnesses were incarcerated, (2) the trial court instructed the jury not to consider the witnesses' shackles and prison attire as an indication of Allah's guilt, and (3) the witnesses contradicted Allah's self-defense theory.[20]

We are not persuaded by the State's arguments. None of the issues raised by the State rise to the level of ameliorating the highly prejudicial impact of having three defense witnesses paraded before the jury in prison uniforms and wearing shackles. Regardless of how credible the testimony of these witnesses may have been, we find it unlikely that the jury would find their testimony credible. The issue of prejudice in this regard was succinctly articulated in *Williams v. State*, 629 P.2d. 54, 57–58 (Alaska 1981):

The prejudice to a defendant from requiring one of his witnesses to testify in hand-

15. *See State v. Pieschke*, 262 N.W.2d 40 (S.D. 1978) (defendant failed to make timely request that witnesses not be forced to wear restraints).

16. *See People v. Mixon*, 120 A.D.2d 861, 502 N.Y.S.2d 299 (1986) (reversal of conviction due to trial judge failing to state on the record its reason for requiring witness be shackled); *State v. Simmons*, 26 Wash.App. 917, 614 P.2d 1316 (1980) (reversing pretrial ruling that witnesses be shackled because trial court failed to give reasons for requiring shackles).

17. Trial judges are not required to hold evidentiary hearings to determine whether to grant a defense motion regarding witness attire or physical restraints. It is sufficient that a ruling be made based upon pleadings filed or oral arguments by counsel. In any event, the reason(s) for denying such a motion must appear in the record.

18. We recognize that the trial court may have had sufficient reasons for denying the motion. However, for appellate review purposes, those reasons must appear in the record.

19. Cases that have found harmless error in the use of shackles or prison attire include: *United States v. Adams*, 1 F.3d 1566 (11th Cir.1993) (prison attire); *United States v. Esquer*, 459 F.2d 431 (7th Cir.1972) (shackles); *Johnson v. Spalding*, 510 F.Supp. 164 (E.D.Wash.1981) (prison

attire); *People v. Allen*, 42 Cal.3d 1222, 232 Cal. Rptr. 849, 729 P.2d 115 (1986) (shackles); *People v. Valenzuela*, 151 Cal.App.3d 180, 198 Cal.Rptr. 469 (1984) (shackles); *People v. Jones*, 10 Cal. App.3d 237, 88 Cal.Rptr. 871 (1970) (prison attire); *State v. Yates*, 174 Conn. 16, 381 A.2d 536 (1977) (prison attire); *Tompkins v. State*, 386 So.2d 597 (Fla.App.1980) (prison attire); *Robbins v. State*, 177 Ga.App. 547, 340 S.E.2d 206 (1986) (shackles); *State v. Marcelin*, 669 So.2d 497 (La.Ct.App. 4th Cir.1996) (prison attire); *State v. Joseph*, 613 So.2d 1131 (La.Ct.App. 5th Cir.1993) (prison attire and shackles); *State v. Pendergrass*, 726 S.W.2d 831 (Mo.Ct.App.1987) (prison attire and shackles); *State v. Jones*, 556 S.W.2d 736 (Mo.Ct.App.1977) (shackles); *White v. State*, 105 Nev. 121, 771 P.2d 152 (1989) (prison attire); *People v. Bryant*, 158 A.D.2d 808, 551 N.Y.S.2d 612 (1990) (shackles); *Thompson v. State*, 514 S.W.2d 275 (Tex.Crim.App.1974) (prison attire and shackles).

20. The State has actually misinterpreted the testimony of the witnesses. None of the witnesses' testimony contradicted Allah's theory of self-defense. The witnesses testified that they did not see Allah strike the officer. The State contends Allah testified that he in fact accidentally struck the officer. However, Allah did not give such testimony. Allah's testimony was to the effect that "if" he had touched the officer when he gestured with his hand while talking, it would have been accidental.

cuffs lies in the inherent psychological impact on the jury, not merely in the fact that the jury may suspect that the witness committed a crime.... [T]he jury is necessarily prejudiced against someone appearing in restraints as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers.

(Internal quotations omitted).

## IV.

### CONCLUSION

In view of the foregoing, the conviction and sentence in this matter are reversed. The case is remanded for a new trial.

Reversed and Remanded.