[No. 3859-9-III. Division Three. July 24, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES M. SIMMONS, *Appellant.*

---

*John Wolfe* and *Charles B. Phillips,* for appellant.

*Arthur R. Eggers, Prosecuting Attorney,* and *Michael S. Mitchell, Deputy,* for respondent.

MUNSON, J.—James Marvin Simmons is charged with first–degree murder for allegedly stabbing a guard at the Washington State Penitentiary. At a pretrial hearing, the trial judge ordered Simmons to be shackled during the course of his trial. Simmons sought and this court granted discretionary review. Pending at the time we granted Simmons review was *State v. Hartzog,* 26 Wn. App. 576, 615 P.2d 480 (1980), which dealt, *inter alia,* with the shackling of a prison inmate during his trial. There, we held that shackling of a criminal defendant is within the inherent

power and discretion of the trial judge; however, "[t]he necessity for those measures must be made on a case–by–case basis after a hearing with a record evidencing the reasons for the action taken." *State v. Hartzog, supra* at 588.

As a guideline to the trial court in exercising its discretion, we set forth factors for the court to consider. Among those are: (1) the seriousness of the present charge; (2) the defendant's character and temperament; (3) age and physical attributes; (4) past record; (5) past escapes or attempted escapes, and evidence of a present plan to escape; (6) threats to harm others or cause a disturbance; (7) self–destructive tendencies; (8) the risk of mob violence or of attempted revenge by others; (9) the possibility of rescue by other offenders still at large; (10) the size and mood of the audience; (11) the nature and physical security of the courtroom; and (12) the adequacy and availability of alternative remedies. *State v. Hartzog, supra* at 588, citing *State v. Tolley,* 290 N.C. 349, 368, 226 S.E.2d 353 (1976).

Here, the record discloses that most of the above cited factors were considered by the trial court. First, the seriousness of Simmons' crime, first–degree murder, is unquestioned. Second, at the pretrial hearing, the prosecutor submitted Simmons' institutional record for the court's consideration. The trial court based its order in part on Simmons' charge with escape from custody 10 years before, as well as a threat of violence and an assault which occurred at the prison less than a year before the hearing. The trial court also considered Simmons' attempted escape in 1976 from a robbery in progress in which he kicked and stabbed a police officer. Simmons was convicted of second–degree assault and first–degree robbery, for which he was serving his sentence at the time the guard was killed at the penitentiary.

Third, in addition to the incidents articulated by the trial judge in his ruling and a part of the institutional record is a report of Simmons inflicting a stomach wound on himself, which required hospitalization, approximately a month and a half prior to the hearing. Fourth, included in the record

before the court was an FBI report detailing crimes of violence for which Simmons had been charged over a period of 6 years with no disposition of those charges.[1]

As part of the trial court's ruling, the judge stated that Simmons would sit at the counsel table and the court would consider allowing him the use of his right hand for taking notes. He would wear his own personal clothing and be brought into the courtroom prior to the jury. The judge mentioned that a modesty shield around the counsel table might be possible so that the jury would be unable to detect the manacles.

Since the trial judge considered and articulated reasons for the record relating specifically to the prior conduct of James Simmons, we find the trial court did not abuse its discretion in ordering James Simmons to be shackled during his trial.[2] As to Simmons' assertion that he should not be shackled because he had not exhibited misconduct at

---

[1]After the hearing and the trial court's ruling, the deposition of a guard who was an eyewitness was published by the trial judge and is a part of this court's record. The eyewitness account portrays James Simmons as the inmate who wielded a 12–inch prison–made knife ("shank") with which he stabbed the unarmed guard. The better practice might have been to have had the deposition published at the hearing so that it could have been a part of the trial court's ruling. Also included in the record is a statement by the trial judge, made on the day of the hearing, that the sheriff and the clerk's office received anonymous phone calls that day from someone indicating an intention "to attempt to break James and George Simmons out." We have considered these matters because the standard of review is whether there has been an abuse of discretion.

[2]The trial court also considered activities of George Simmons, James Simmons' brother, at his own trial plus prior violence which had occurred in the courtroom involving other prison inmates. In *State v. Hartzog, supra* at 586–87, this court held:

discretion must be founded upon a factual basis set forth in the record. A broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be "potentially dangerous" is a failure to exercise discretion. . . . *The activities of other persons, unrelated or not imputable to an accused, may not be used as a basis for shackling a criminal defendant.*

(Citations omitted. Italics ours.) On the present charge, George and James Simmons are codefendants; while their kinship has some relevancy, it is insufficient by itself to justify physical restraint. The record reflects the trial judge is taking other measures to see that a similar incident would not occur during this trial. As

any prior judicial or quasi–judicial proceeding, the law does not restrict consideration to a dangerous or disruptive act in a courtroom setting before shackling a criminal defendant may be ordered. *Loux v. United States,* 389 F.2d 911 (9th Cir.), *cert. denied,* 393 U.S. 867, 21 L. Ed. 2d 135, 89 S. Ct. 151 (1968).

Because the trial judge also ruled that all inmate witnesses for both the prosecution and defense will be shackled at Simmons' trial, it is necessary to address this issue although it is not raised on appeal. *State v. Hartzog, supra,* holds the same principle which applies to inmate defendants applies equally to inmate witnesses. Because the use of physical restraints is an extreme measure which should be used only as a last resort, *Illinois v. Allen,* 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970), the necessity for using physical restraints must be made on a case–by–case basis after a hearing with a record. *State v. Hartzog, supra* at 588. Here, the record is silent as to any reasons for shackling inmate witnesses.

Therefore, we find there was no abuse of discretion in requiring shackling of James M. Simmons; but as to the shackling of any inmate witnesses, the record is void of any reasons for such measures and until a record is made, those inmate witnesses called by either the State or the defense cannot be physically restrained.

Order affirmed as to James Simmons and reversed as to all inmate witnesses.

MCINTURFF, J. (specially concurring)—The opinion of my learned colleague is well reasoned. But, I would go further and mandate that some temporary or permanent nontransparent material be placed around the table where the defendant is sitting. The obvious purpose would be to shield from the jury's view the shackled condition of a defendant.

---

to instances of disruption by prison inmates, the record does not reveal whether this occurs in every trial involving inmates or only in a few instances.

Our entire system of justice is based upon the essential dignity of the human being. Another fundamental philosophy flowing through our concept of due process is the presumption of innocence until proven guilty. Shackling the defendant under the circumstances of this case is reasonable; but to unnecessarily allow the jury to view the defendant's shackles offends my concept of human dignity and the presumption of innocence.

GREEN, C.J. (concurring in part, dissenting in part)—I concur with the result reached by the majority as to the defendant, James M. Simmons. For the reasons stated in my dissenting opinion in *State v. Hartzog*, 26 Wn. App. 576, 615 P.2d 480 (1980), I respectfully dissent from the majority's conclusion as to the inmate witnesses.

Reconsideration denied August 27, 1980.

Review denied by Supreme Court October 24, 1980.