[No. 70666-2.   En Banc.]
Argued September 25, 2001.     Decided May 2, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. MARCELINO J. RODRIGUEZ, *Petitioner*.

*William D. Edelblute*, for petitioner.

*James L. Nagle, Prosecuting Attorney*, and *Gabriel E. Acosta, Deputy*, for respondent.

MADSEN, J. — Marcelino Rodriguez seeks reversal of a Court of Appeals decision affirming his conviction on two counts of delivery of cocaine. Rodriguez contends that the appearance of a state witness in prison garb, shackles and handcuffs, while testifying to a criminal association with the defendant, was unfairly prejudicial and that the trial court erred in denying his motion for a mistrial. The Court of Appeals affirmed the trial court, holding that the judge was not required to conduct a security hearing before the appearance of a state witness in prison garb and shackles. We hold that the prohibition against physical restraints in the courtroom applies to all inmate witnesses. We affirm the conviction, however, because the defendant did not object to the witness's appearance and has failed to demonstrate that only a new trial could have cured the prejudice caused by that appearance.

## FACTS

Marcelino Rodriguez was convicted of two counts of delivery of cocaine in May 1999. The convictions arose out of two controlled buys arranged by the police through a paid informant, Arturo Suarez. On two separate occasions during the spring of 1999, Suarez contacted Rodriguez in order to purchase cocaine. Suarez told Rodriguez each time that he wanted to buy an "eight-ball," or four grams of cocaine. On each occasion the police then gave Suarez prerecorded money with which to make the drug buy. Following each meeting with Rodriguez, Suarez returned and gave the officers two grams of cocaine he said he had purchased from Rodriguez. The amount on each occasion was two grams less than the four grams expected when purchasing an eight-ball.

According to Arnulfo Ojeda, a State witness, Rodriguez contacted him prior to each meeting with Suarez to pur-

chase cocaine for the planned transaction. At the scene of the second meeting, officers observed Rodriguez enter a vehicle to make what officers believed was a drug buy. Officers followed the car in which they had seen Rodriguez and later determined that it was driven by Ojeda. Police obtained a search warrant for Ojeda's residence and during the search the officers found two of the prerecorded $20 bills that Suarez had given to Rodriguez during the second drug buy.

When the state called Ojeda as a witness, officers brought him into the courtroom wearing a black and white striped prison suit, handcuffs, and his ankles were bound by shackles. Ojeda testified that he had been charged with delivering cocaine to Rodriguez. He also testified that he had pleaded guilty to delivering the cocaine, later purchased by Suarez, as part of a plea agreement in which the prosecutor agreed to recommend deportation rather than incarceration.

Immediately following Ojeda's testimony, Rodriguez moved for a mistrial arguing that the witness's appearance in prison garb and shackles while testifying to a criminal association with the defendant was unfairly prejudicial. The trial court denied the motion reasoning that prohibitions on shackling prisoners do not apply to State's witnesses. Rodriguez appealed. The Court of Appeals affirmed, holding that the trial judge was not required to conduct a security hearing and that the trial judge did not abuse his discretion in denying Rodriguez's motion for a new trial.

## ANALYSIS

The issue in this case is whether the trial judge erred when he denied Mr. Rodriguez's motion for a new trial following the testimony of a State's witness who appeared in court while shackled and dressed in jail garb. Before we can answer that question, however, we must decide whether the prohibitions against physical restraints in the courtroom apply equally to all inmate witnesses. It is a well

settled rule that absent some compelling reason for physical restraint, defendants may appear in court free of prison garb and shackles. *See Estelle v. Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); *State v. Hartzog*, 96 Wn.2d 383, 635 P.2d 694 (1981); *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State v. Finch*, 137 Wn.2d 792, 975 P.2d 967 (1999); *State v. Elmore*, 139 Wn.2d 250, 985 P.2d 289 (1999), *cert. denied*, 531 U.S. 837 (2000); *State v. Hutchinson*, 135 Wn.2d 863, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999); *State v. Breedlove*, 79 Wn. App. 101, 900 P.2d 586 (1995). This rule has also been extended to defense inmate witnesses by every court to consider the issue. *See Hartzog*, 96 Wn.2d at 399; *Wilson v. McCarthy*, 770 F.2d 1482 (9th Cir. 1985); *State v. Simmons*, 26 Wn. App. 917, 614 P.2d 1316 (1980); *United States v. Brooks*, 125 F.3d 484 (7th Cir. 1997); *Woods v. Thieret*, 5 F.3d 244 (7th Cir. 1993); *United States v. Amaro*, 816 F.2d 284 (7th Cir. 1987); *Harrell v. Israel*, 672 F.2d 632 (7th Cir. 1982); *Kennedy v. Cardwell*, 487 F.2d 101, 105 (6th Cir. 1973); *United States v. Roustio*, 455 F.2d 366 (7th Cir. 1972).

■ This court and the Court of Appeals have addressed the issue of witness restraints generally in two cases, *Hartzog*, 96 Wn.2d 383 and *Simmons*, 26 Wn. App. 917. In *Hartzog*, this court held that a blanket security order applying generally to all inmate witnesses constitutes an abuse of discretion. The court began by recognizing that, historically, restraints are an extreme measure to be used only when necessary to prevent escape, injury to persons in the courtroom, or to prevent disorder. *Hartzog*, 96 Wn.2d at 398. Then the court stated that "[w]hile a shackled witness may not directly affect the presumption of innocence, it seems plain that there may be some inherent prejudice to defendant, as the jury may doubt the witness' credibility." *Id.* at 399 (citing *Kennedy*, 487 F.2d at 105 n.5). Balanced against the defendant's right to a fair trial, the *Hartzog* court noted, is the broad discretion afforded the trial court judge to provide for order and security in the courtroom. *Id.*

at 401. Accordingly, this court adopted standards set forth by the Court of Appeals in *Hartzog* for trial courts to consider when faced with physical restraint decisions:

> "[A]ge and physical attributes; his past record; . . . threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; . . . the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*Hartzog*, 96 Wn.2d at 400 (quoting *State v. Tolley*, 290 N.C. 349, 368, 226 S.E.2d 353 (1976)). Notably, the court did not distinguish between the restraint of defense and prosecution witnesses, but ruled that a trial court must engage in a case by case analysis to determine if shackling of an inmate witness is necessary. *Hartzog*, 96 Wn.2d at 400. The holding was neither explicitly limited to defense witnesses nor explicitly inclusive of witnesses for the State. Rather, the court focused on the need for the trial court to exercise its discretion in determining the necessity and the extent of security measures to protect the process. *Id.* at 400.

Similar to *Hartzog*, the trial court in *Simmons* issued a blanket order that all inmate witnesses for both the prosecution and the defense would be shackled at Simmons' trial. Following this court's decision in *Hartzog*, the Court of Appeals reversed the order and held that "until a record is made, those inmate witnesses called by either the State or the defense cannot be physically restrained."[1] *Simmons*, 26 Wn. App. at 921.

The State argues that our analysis in *Hartzog* does not support a prohibition against physical restraint of all witnesses in the courtroom and that *Simmons* was wrongly decided. We disagree.

Courts that have extended the restraint rule to witnesses have done so for two reasons. First, as this court held in *Hartzog*, a jury may suspect the credibility of a witness who

---

[1] As petitioner points out, there is no evidence in the record that there was any need for the witness to be in the courtroom in prison garb, shackles and handcuffs. There is no indication, even reading the record broadly, that the witness was dangerous or that there was any danger to anyone in the courtroom.

appears in court wearing shackles, thereby prejudicing the defendant. *Hartzog*, 96 Wn.2d at 399. *See also Harrell*, 672 F.2d at 635 (citing *United States v. Garcia*, 625 F.2d 162 (7th Cir. 1980)); and *Kennedy*, 487 F.2d 101. Because this impacts a defendant's right to a fair trial, a witness may not appear in physical restraints except in compelling circumstances. *Hartzog*, 96 Wn.2d at 400; *Wilson*, 770 F.2d 1482; and *Roustio*, 455 F.2d 366. *See also Simmons*, 26 Wn. App. at 921 (physical restraints may be used only as a last resort); *United States v. Esquer*, 459 F.2d 431 (7th Cir. 1972); *Harrell*, 672 F.2d at 635-36 (both require a showing of extreme need to justify the use of physical restraints at trial); *United States v. Fountain*, 768 F.2d 790, 794 (7th Cir. 1985) (physical restraint is permissible to prevent grave danger of witness attacking people in courtroom or attempting to escape); *Kennedy*, 487 F.2d at 105 n.5 (physical restraint may be necessary when there is evident danger of escape or harm by witness in courtroom). The judge must conduct a hearing weighing the reasons for physical restraint on the record and determine that the prejudice to the defendant is outweighed by the necessity for physical restraint. *See Hartzog*, 96 Wn.2d 383; *Roustio*, 455 F.2d at 371; *Fountain*, 768 F.2d at 794; *Simmons*, 26 Wn. App. at 921.

Although potential harm to a defense witness's credibility has been accepted as a reason for extending the rule against physical restraint to defense witnesses, that rule has its basis in protecting the defendant's right to a fair trial. There is no dispute that prison garb, shackles and handcuffs have effects on a jury that are hard to quantify. As the United States Supreme Court discussed in *Estelle*, when a defendant wears prison garb during a trial it creates a "continuing influence" that could very well "affect a juror's judgment" by allowing "impermissible factors [to come] into play." *Estelle*, 425 U.S. at 505. The Supreme Court has also said: "[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on . . .

circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978) (genuine risk that jury would convict defendant on basis of extraneous considerations rather than on proof adduced at trial). Rodriguez argues there is the same danger when one closely associated with the defendant testifies in prison garb, creating a continuing influence on the minds of jurors that could allow impermissible factors to come into play in the jury's deliberations. The Court of Appeals rejected this argument and held as a matter of law that a defendant is never prejudiced when a government witness appears in court in prison garb or shackles. However, the facts of this case belie that conclusion. The witness in this case, while clad in clothing clearly denoting guilt and his status as a prisoner, testified to a criminal association with the defendant. This associated guilt and prisoner status had the potential to prejudice the presumption of innocence to which the defendant was entitled. The rule against physical restraint has its roots in constitutional fairness itself and such fairness may be furthered only by extending the rule to government witnesses.

We have been cited to only two courts that have considered whether a *government* witness testifying while wearing prison garb prejudiced a defendant, and both assumed that prejudice to the defendant was possible. *See Brooks*, 125 F.3d 484; *State v. Charron*, 743 S.W.2d 436 (Mo. Ct. App. 1987). Although the court in *Brooks* affirmed the defendant's conviction, it considered whether the government witness's appearance in prison garb caused prejudice to the defendant. The government witness in *Brooks* had been granted immunity and was serving a sentence for two convictions unrelated to the defendant. The court found that since it was made clear to the jury that the witness's status as an inmate was wholly unrelated to any act of the defendant, there was no prejudice. Unlike the situation in *Brooks*, there is a direct relationship here between the witness's status as an inmate and the crime with which the defendant is charged. The State's witness here was incar-

cerated for essentially the same criminal act for which Rodriguez was on trial and at trial identified the cocaine in evidence as the exact cocaine he had been charged with delivering.

Similarly, the court in *Charron* considered whether the defendant was prejudiced when a codefendant testified for the State while wearing prison clothing. The court cited *Estelle* and stated that "[i]t is well established that a prisoner cannot be compelled to appear in court in identifiable prison clothing." *Charron*, 743 S.W.2d at 438. Although the court recognized the potential for prejudice, it upheld the conviction because the defendant had failed to object at trial and there was no indication that the garb was recognizable as prison issue. *Id*. at 438-39.

The State relies on *Brooks* and *Charron* to support its position that the rule against witness restraint should not be extended to include State inmate witnesses. However, both courts did consider whether the defendant was prejudiced when a prosecution witness testifies in prison garb. Here, the State's witness was not only clothed in jail garb but also bound in shackles and handcuffs.

As early as 1897 this court recognized the "ancient right of one accused of crime . . . to appear in court unfettered." *State v. Williams*, 18 Wash. 47, 50, 50 P. 580 (1897). In recent years, the concept of a fair trial has been expanded to include the prohibition against physical restraint of both defendants and their witnesses. While it is difficult to measure the prejudicial affect of shackling on a jury, it is possible to imagine the potential. To fully protect the defendant against being convicted by impermissible factors rather than solely by the evidence, the rule against physical restraint, without a showing of necessity, must apply to all inmate witnesses.

This view is also supported by the court's obligation to uphold the dignity of the judicial process. As stated by this court in *State v. Finch*, the shackling of witnesses is an affront to the dignity of the court regardless of whether it is a defendant or a witness:

"Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique [shackling and gagging] is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."

*Finch*, 137 Wn.2d at 846 (quoting *Allen*, 397 U.S. at 344). Justice Brennan, in his concurring opinion in *Allen*, went on to say "It offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law." *Allen*, 397 U.S. at 350-51. *See also Lemons v. Skidmore*, 985 F.2d 354 (7th Cir. 1993); *Kennedy*, 487 F.2d 101. A policy upholding the dignity and decorum of the judicial forum applies to the use of physical restraints, regardless of who is being restrained. Accordingly, we hold that an inmate witness, whether testifying for the defense or the state, should not appear before a jury in restraints, absent a finding of necessity by the trial court, based on the considerations outlined in *Hartzog*. *Hartzog*, 96 Wn.2d 383.

We do not, however, suggest that the trial judge is required to conduct a security hearing sua sponte. Rather, the responsibility for requesting a hearing rests with the parties. In this case neither the State nor Mr. Rodriguez requested a hearing. Additionally, Mr. Rodriguez did not object to Ojeda's appearance in shackles, nor did he request a curative instruction to the jury. Instead, after Ojeda completed his testimony, Rodriguez moved for a mistrial. The trial court denied his motion. Our review is of that denial.

██ This court applies an abuse of discretion standard in reviewing the trial court's denial of a mistrial. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). A reviewing court will find abuse of discretion only when " 'no reasonable judge would have reached the same conclusion.' " *Id.* (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711 (1989)). A trial court's denial of a motion for mistrial will be overturned only when there is a " 'substantial likelihood' " that the error prompting the request for a

mistrial affected the jury's verdict. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994) (quoting *State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10 (1991)). Further, this court has held that trial courts "should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly."[2] *State v. Kwan Fai Mak*, 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *quoted in Hopson*, 113 Wn.2d at 284.

█ We have recognized that, under some circumstances, prejudice arising from shackling may be cured through an appropriate instruction to the jury. *State v. Ollison*, 68 Wn.2d 65, 69, 411 P.2d 419 (1966). In *Elmore*, this court placed on the defendant "the obligation to object or request a curative instruction regarding shackling." *Elmore*, 139 Wn.2d at 273. Mr. Rodriguez did neither.[3] Nevertheless, Rodriguez argues that the prejudice caused by Mr. Ojeda's appearance was so great that nothing short of a new trial could cure the error. We disagree.

The mere fact that a jury sees an inmate wearing shackles does not mandate reversal. *State v. Gosser*, 33 Wn. App. 428, 435, 656 P.2d 514 (1982); *State v. Early*, 70 Wn. App. 452, 853 P.2d 964 (1993). In *Gosser*, the defendant moved for a mistrial, contending that his right to a fair trial

---

[2] The dissent argues that we must apply the harmless error test followed in *State v. Elmore*, 139 Wn.2d 250, 985 P.2d 289 (1999), *cert. denied*, 531 U.S. 837 (2000) and *State v. Finch*, 137 Wn.2d 792, 975 P.2d 967 (1999). However, in *Finch*, this court reviewed the trial court's *order* that the defendant be shackled throughout the trial. Here we are not reviewing a court's order to shackle a witness. Similarly, although the dissent correctly notes that a claim of unconstitutional shackling is subject to a harmless error analysis, we are not reviewing a claim of unconstitutional shackling, we are reviewing a claim that a motion for mistrial was wrongly denied.

[3] We do not find fault with the trial court for failing to give a curative instruction sua sponte. As this court noted in *Elmore*, 139 Wn.2d at 273, " '[a]lthough no [curative] instruction was requested [regarding shackling], the better course may have been for the trial court *sua sponte* to give an instruction concerning the shackles. Nevertheless, we decline to impose upon the trial court the mandatory responsibility of giving such an instruction when the defendant fails to request one. The choice whether an instruction should be given should ordinarily lie with the defendant.' " (quoting *Wilson v. McCarthy*, 770 F.2d 1482, 1485-86 (9th Cir. 1985) (citation omitted)).

was prejudiced when several jurors observed his shackles being removed outside the courtroom. He did not request a curative instruction and could point to nothing other than the jury's brief view of him in shackles to support his contention that only a new trial would cure the prejudice. The court affirmed the trial court's denial of the motion for mistrial. Similarly, in *State v. Sawyer*, members of the jury observed a deputy handcuffing the defendant at the end of the first day of trial. This court held that the prompt admonition to the jury the following day cured the error, and affirmed the denial of motion for mistrial. *State v. Sawyer*, 60 Wn.2d 83, 371 P.2d 932 (1962). In *State v. Russell*, 33 Wn. App. 579, 588, 657 P.2d 338 (1983), a deputy sheriff stopped the defendant as he was attempting to join his attorney at a sidebar, which defendant contended created a prejudicial inference that the defendant was dangerous. The defendant did not request a cautionary instruction but instead moved for a mistrial. The Court of Appeals affirmed the trial court's denial of the motion, holding that when an error can be obviated by jury instruction, the error is waived by failing to request such an instruction.[4]

In this case, if Rodriguez had objected before Ojeda testified, the court would have had an opportunity to weigh the considerations involved. If the court concluded that the witness was improperly dressed and restrained, it could have corrected the problem and admonished the jury, reducing or eliminating the potential for prejudice arising from the jury's view of Mr. Ojeda in jail garb, handcuffs, and shackles.

We believe that requiring a timely objection in the circumstances here is appropriate because in some instances the defense may anticipate some tactical advantage from having a State's witness testify in restraints. In such an instance, the defense should not be allowed to second-guess its own tactical decision by an after-the-fact objection.

---

[4] The dissent contends that a new trial is the only proper remedy when the witness is seen in shackles. This court has never so held, and these cases in which a defendant's motion for a new trial was denied, even though the defendant was seen in physical restraints, are to the contrary.

Here, Rodriguez argues that Ojeda's appearance took him by surprise and that his failure to make a timely objection was justified. Assuming Rodriguez is correct, we nevertheless believe that an appropriate curative instruction, even after Ojeda's testimony, could have ameliorated any prejudice caused by Ojeda's appearance. Ojeda testified that he had pleaded guilty to delivering the cocaine that Rodriquez later allegedly sold to the police informant, Suarez. In exchange for his plea, Ojeda testified, the prosecutor agreed to recommend his deportation instead of a jail sentence. Rodriguez does not dispute the admissibility of this testimony. Thus, the jury knew Ojeda had been convicted and that he would not be sentenced to jail, but deported. Under these circumstances a caution to the jury regarding Ojeda's appearance would have been sufficient.

We conclude that the defendant has failed to carry his burden of demonstrating that a new trial was mandated in this case.

## CONCLUSION

We hold that a court should conduct a hearing to determine the need for security measures whenever a prisoner will appear in court. This is without regard to whether the prisoner is the defendant or a defense or state witness. However, we affirm the conviction because the defendant failed to timely object or to request a curative instruction, and has failed to establish that only a new trial could have cured any prejudice.

The Court of Appeals is affirmed.

ALEXANDER, C.J., and SMITH, JOHNSON, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

SANDERS, J. (dissenting) — The majority in effect holds Marcelino J. Rodriguez's constitutional right to a fair trial was violated when Arnulfo Ojeda was allowed to testify in

prison garb, handcuffs, and shackles.[5] I agree. I however part ways with the majority on the remedy, because the majority provides none.

I.   Abuse of Discretion: A Mistrial Should Have Been Granted

When a defendant's constitutional right to a fair trial has been violated and he moves for mistrial, the motion should be granted. *State v. Weber*, 99 Wn.2d 158, 165, 659 P.2d 1102 (1983); *State v. Essex*, 57 Wn. App. 411, 415, 788 P.2d 589 (1990); *State v. Wilson*, 20 Wn. App. 592, 595, 581 P.2d 592 (1978); *State v. Brooks*, 16 Wn. App. 535, 539, 557 P.2d 362 (1976); *State v. Turner*, 16 Wn. App. 292, 299, 555 P.2d 1382 (1976); *see also Holbrook v. Flynn*, 475 U.S. 560, 567-72, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986); *Estelle v. Williams*, 425 U.S. 501, 503-04, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir.), *cert. denied*, 531 U.S. 881 (2000); *United States v. Pina*, 844 F.2d 1, 8 (1st Cir. 1988); *State v. Ford*, 278 Mont. 353, 359-60, 926 P.2d 245 (1996); *see also generally* 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4216 (1997).

Where there is no legitimate reason to place physical restraints on a witness in the courtroom, in full view of the jury, the proper remedy is also a new trial. *See State v. Allah Jamaal W.*, 209 W. Va. 1, 6-8, 543 S.E.2d 282 (2000); *Jackson v. State*, 698 So. 2d 1299, 1303-04 (Fla. Dist. Ct. App. 1997); *People v. Mixon*, 120 A.D.2d 861, 862, 502 N.Y.S.2d 299 (1986); *People v. Valenzuela*, 151 Cal. App. 3d 180, 191-96, 198 Cal. Rptr. 469 (1984); *Williams v. State*,

---

[5] The majority opinion footnotes "we are not reviewing a claim of unconstitutional shackling, we are reviewing a claim that a motion for mistrial was wrongly denied." Majority at 270 n.2. This entirely mischaracterizes the issue. No matter how one attempts to spin it, this is a case about the right to a fair trial. It is constitutional in nature. The cases on which the majority relies are constitutional cases. While the right to a fair trial issue happened to arise in a motion for mistrial context here, this genesis does not by itself derogate a question otherwise constitutional into one merely procedural. The majority holds "the prohibition against physical restraints" applies to all inmate witnesses. *See, e.g.*, majority at 262. This "prohibition" stems from a source none other than our state and federal constitutions. If not, where does the "prohibition" come from?

629 P.2d 54, 56-58 (Alaska 1981); *Commonwealth v. Brown,* 364 Mass. 471, 479, 305 N.E.2d 830 (1973); *State v. Coursolle,* 255 Minn. 384, 389-90, 97 N.W.2d 472 (1959); 21A AM. JUR. 2D *Criminal Law* §§ 1016, 1019 (1998); R.P. Davis, Annotation, *Right of Accused To Have his Witnesses Free from Handcuffs, Manacles, Shackles, or the Like,* 75 A.L.R.2d 762 (1961).

Our opinions on the propriety of physically restraining witnesses, although few and not squarely on point, are in accord. *See, e.g., State v. Hartzog,* 96 Wn.2d 383, 399, 635 P.2d 694 (1981) (stating "the physical restraint of witnesses should likewise be undertaken only in compelling circumstances, which the trial judge should explain on the record") (citing *United States v. Roustio,* 455 F.2d 366, 371 (7th Cir. 1972); 3 AMERICAN BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE, Std. 15-3.1(c) (2d ed. 1980)); *State v. Williams,* 18 Wash. 47, 50-51, 50 P. 580 (1897) (reversing order to manacle witnesses for violating right to fair trial when restraint was unnecessary, in view of jury, and trial judge offered no proper justification in record); *see also State v. Simmons,* 26 Wn. App. 917, 920-21, 614 P.2d 1316 (1980) (reversing orders to shackle witnesses because trial judge abused his discretion by not articulating on the record legitimate reasons for restraint).

The majority is correct that a trial judge's decision to deny a motion for mistrial is generally reviewed for abuse of discretion. Nevertheless, we must be clear on exactly what is within that discretion. To uphold the use of physical restraints, discretion lies with the judge's view of what the appropriate and necessary restraints are (if any), not his understanding of whether the criminal defendant's constitutional right to a fair trial has been or will be violated. This is because when a mistrial motion is based on a violation of a legal right, the ruling is reviewed like other questions of law, i.e., de novo. 1 STEVEN ALAN CHILDRESS & MARTHA S. DAVIS, FEDERAL STANDARDS OF REVIEW § 4.01 (3d ed. 1999); 2 WASHINGTON STATE BAR ASS'N, WASHINGTON APPELLATE PRACTICE DESKBOOK §§ 18.3, 18.7(9) (1993).

Even if the majority is wedded to the idea that the "abuse of discretion" standard must apply in all respects to the denial of a mistrial, a wealth of authority nonetheless makes it clear that a trial court *does* abuse its discretion when it fails to apply the correct rule of law. *State v. McDonald*, 138 Wn.2d 680, 696, 981 P.2d 443 (1999); *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995); *In re Det. of G.V.*, 124 Wn.2d 288, 295, 877 P.2d 680 (1994); *State v. Blight*, 89 Wn.2d 38, 40-41, 569 P.2d 1129 (1977); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990); *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001); *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000); *United States v. Alviso*, 152 F.3d 1195, 1198 (9th Cir. 1998); *United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996) (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir. 1995)); *Abrams v. Interco Inc.*, 719 F.2d 23, 28 (2d Cir. 1983); *Star Enter. v. Marze*, 61 S.W.3d 449, 456 (Tex. App. 2001); *State v. Gundenschwager*, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995); *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995); 1 CHILDRESS, *supra* § 4.01; 5 AM. JUR. 2D *Appellate Review* § 695 (1995).

Here, the trial judge fell into legal error because he denied Rodriguez's mistrial motion on the erroneous belief Rodriguez's right to a fair trial was not violated when Ojeda was allowed to testify in prison clothes, handcuffs, and shackles. Furthermore, the record contains no justification whatsoever for using such restraints.[6] It was therefore error to deny a mistrial.

II. Rodriguez's Unfair Trial Was Not Harmless

The majority appears to find Rodriguez properly preserved and raised this constitutional issue for our review, as

---

[6] As correctly pointed out in the concurrence below, "[a]t trial, the State did not justify Arnulfo Ojeda's appearance with explanations that he posed a danger to the community or a risk of flight. Rather, the State offered no explanations for Mr. Ojeda's appearance, apparently assuming it was appropriate to offer the testimony of a shackled prosecution witness dressed in a jail uniform." *State v. Rodriguez*, 103 Wn. App. 693, 703-04, 14 P.3d 157 (2000) (Kurtz, C.J., concurring).

it agrees such was error. The only possible relevant question remaining is whether the State has proved the constitutional error harmless beyond a reasonable doubt.[7] *See Chapman v. California*, 386 U.S. 18, 21-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Caldwell*, 94 Wn.2d 614, 618, 618 P.2d 508 (1980) (citing *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980)).

We consistently and recently have stated (also in shackling cases) that constitutional errors are *presumed* prejudicial; whereas the State bears the burden to prove them harmless beyond a reasonable doubt. *State v. Damon*, 144 Wn.2d 686, 692-93, 25 P.3d 418, 33 P.3d 735 (2001) (shackling case); *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001) (same); *State v. Finch*, 137 Wn.2d 792, 859, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999) (same).

The majority cites *State v. Elmore*, 139 Wn.2d 250, 273, 985 P.2d 289 (1999), *cert. denied*, 531 U.S. 837 (2000), as a basis to fault Rodriguez for not objecting to the shackling or requesting a curative instruction. Majority at 270. However, this overlooks the fact Rodriguez made and argued a motion for mistrial immediately after Ojeda's testimony, as if this motion is somehow not tantamount to an objection. More importantly, it also overlooks a key component in the *Elmore* opinion itself: *that case in fact applied harmless error review. See* 139 Wn.2d at 274 (stating "[a] claim of unconstitutional shackling is subject to a harmless error analysis"); *see also Finch*, 137 Wn.2d at 859-66 (applying harmless error review in shackling case even though defendant lost motion for a new trial). Therefore, I can only suppose the majority wishes to penalize Rodriguez for

---

[7] The majority alarmingly neglects to discuss harmless error. By doing so, it erroneously places the appellate burden on Rodriguez to prove "prejudice." Majority at 269-72. Of course, whether there is "prejudice" is just another way of asking if the error was harmful or harmless, i.e., prejudicial or not.

moving for a mistrial rather than making an objection per se.[8]

In any event, blaming Rodriguez for not objecting does not square with the majority's tacit opinion that he properly preserved the constitutional error for our review, nor does it fit with the evidence in the record which clarifies that Rodriguez and his counsel had no reason to anticipate the State would dress Ojeda in prison garb, handcuffs, and shackles for his testimony. In fact, Rodriguez and his counsel first saw Ojeda when the jury did—too late. The bell cannot be unrung. The harm was done.[9]

The majority provides no authority (or any argument) to ignore harmless error review. Consistent with our prior opinions, I would apply harmless error review, the burden of proof resting on the State to prove beyond a reasonable doubt that the constitutional error was harmless.[10] Here, in both its briefing and oral argument the State neglects to

---

[8] Interestingly, Rodriguez could obtain harmless error review of the constitutional error *even if it were raised for the first time on appeal. See* RAP 2.5; *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988) ("The proper way to approach claims of constitutional error asserted for the first time on appeal is as follows. First, the appellate court should satisfy itself that the error is truly of constitutional magnitude—that is what is meant by 'manifest'. If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial according to the harmless error standard set forth in *Chapman v. California, supra*." (footnote omitted)).

[9] The majority also appears to hold that any time a witness testifies in restraints it violates the defendant's constitutional right to a fair trial. Yet, the majority somehow opines such a violation of the defendant's rights could in some cases work to the *advantage* of a defendant. "In such an instance," the majority reasons, "the defense should not be allowed to second-guess its own tactical decision by an after-the-fact objection." Majority at 271. While I disagree in principle, I fail to see the relevance of the majority's discussion because even it does not go so far as to conclude Rodriguez's case was aided by Ojeda's testimony.

[10] The majority disingenuously mischaracterizes this opinion when it claims "[t]he dissent contends that a new trial is the only proper remedy when the witness is seen in shackles." Majority at 271 n.4. No such contention is made. Nor could such be the case in view of the position taken herein that the error is subject to harmless error review. What is maintained—and perhaps this is what the majority is attempting to refute, albeit without reasoned discussion—is that the State in this case has failed to show how a violation of a defendant's constitutional right to a fair trial is harmless beyond a reasonable doubt when the State has bound a witness in physical restraints, dressed him in traditional jail garb, the witness testifies as such in full view of the jury, *and* the State offers no legitimate reason for doing so.

discuss the harmfulness of the error at any appreciable length; instead, it focuses solely on whether a defendant's rights could ever be violated when a government witness is restrained without a prior hearing, if so whether such an error in this case was waived, and the pertinent standard of review. *See* Br. of Resp't; Suppl. Br. of Resp't; Wash. Supreme Ct. Oral Argument (Sept. 25, 2001), *available at* http://www.tvw.org. In addition, numerous courts have acknowledged that it is " 'inherently prejudicial' " when the jury in a criminal case sees the unfair use of restraints or prison garb for more than just a brief period of time. *See, e.g., Finch,* 137 Wn.2d at 845 (quoting *Holbrook,* 475 U.S. at 568); *Hartzog,* 96 Wn.2d at 399 (citing *Kennedy v. Cardwell,* 487 F.2d 101, 105 n.5 (6th Cir. 1973)); *Simmons,* 26 Wn. App. at 921 (implying per se reversal when witnesses are restrained without prior hearing on record); *see also Waldon,* 206 F.3d at 607; *Rhoden v. Rowland,* 172 F.3d 633, 636-38 (9th Cir. 1999).

No way has the State carried its burden.

III. Conclusion

"A fair trial is a legal trial; one conducted according to the rules of common law except in so far as it has been changed by statute; one where the accused's legal rights are safeguarded and respected. A fair trial is a proceeding which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial. A fair trial is that which is such in contemplation of law, namely, that which the law secures to the party, and a fair trial before an impartial jury means one where the jurors are entirely indifferent between the parties. The necessary factors in a fair trial are an adequate hearing and an impartial tribunal, free from any interest, bias, or prejudice. A fair trial is only likely to accomplish full justice within human limitations."

*Box v. State,* 74 Ark. App. 82, 88-89, 45 S.W.3d 415 (2001) (quoting 88 C.J.S. *Trial* § 1 (1955)).

One of the first propositions of the orderly administration of the law is that a defendant, either guilty or innocent, shall be accorded a fair trial. The fact that this or the trial court may consider the accused to be guilty in no wise lessens the court's

duty to see that he has a fair trial. A fair trial implies among other things that the court exclude all evidence that has no material bearing on the case.

*State v. Robinson*, 24 Wn.2d 909, 917, 167 P.2d 986 (1946).

The majority of this Court holds Rodriguez never received that which he is constitutionally entitled: a fair trial. The proper remedy is to give him one.

I therefore dissent.