

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36918-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ALEXANDER DONALD J. RIENDEAU, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Alexander Riendeau appeals his conviction for witness tampering. We affirm.

## FACTS

Mr. Riendeau was arrested on suspicion of domestic violence against his girlfriend, Correna Gibson. While in jail, Mr. Riendeau made three telephone calls to Ms. Gibson. In those calls, Mr. Riendeau and Ms. Gibson discussed the assault, their relationship, and financial matters. Mr. Riendeau also asked Ms. Gibson to help end the case against him. To that end, he asked Ms. Gibson to speak to the prosecutor and the victim advocate, and urged her not to cooperate with the investigation.

Mr. Riendeau was charged with witness tampering as a result of the phone calls. The case proceeded to a jury trial.

During jury selection, the trial court asked the venire if anyone had "an experience with a similar or related type of case or incident, . . . whether it be a witness or an accused?" Report of Proceedings (RP) (Apr. 15, 2019) at 47. Juror 18 volunteered that he had:

> PROSPECTIVE JUROR NO. 18: Yes. My—my wife—
>
> THE COURT: Juror No. 18.
>
> PROSPECTIVE JUROR NO. 18: —was diagnosed schizophrenic several times and she became violent and destructive towards me and some other people. She's been released.
>
> THE COURT: Would that experience or that relationship influence your consideration of this case?
>
> PROSPECTIVE JUROR NO. 18: I—I don't know how to answer that, Your Honor. I'm not sure.
>
> THE COURT: Do you think you'd be able to decide this case based upon what's presented to you in this courtroom and not on any of the history between you and your wife or what she's been through?
>
> PROSPECTIVE JUROR NO. 18: Well, I guess I would have to know the facts, like if violence is done by someone that was mentally ill or not. I—
>
> THE COURT: All right. *So whether or not you could consider this case impartially would be dependent upon the facts that come out?*

2

PROSPECTIVE JUROR NO. 18: *Right.*

THE COURT: Okay. Thank you.

*Id*. at 47-48 (emphasis added).

Juror 18 did not raise his hand when the court asked the venire if they could not follow the court's instructions or if there was anything else that would affect their impartiality. Nor did he speak out when the prosecutor asked the venire if anyone had views that they held too strongly to set aside.

However, Juror 18 voiced additional concerns during the prosecutor's questioning about circumstantial evidence.

[Prosecutor]: —18.

PROSPECTIVE JUROR NO. 18: With my belief system, you got to have at least two witnesses.

[Prosecutor]: Okay.

PROSPECTIVE JUROR NO. 18: And circumstantial evidence, it could be nebulous.

[Prosecutor]: Okay.

PROSPECTIVE JUROR NO. 18: Manipulated in such a way as to make someone look guilty and they're really not. I—to me, it's very iffy.

RP (Apr. 15, 2019) at 82. Neither the parties nor the court asked any additional questions of Juror 18 on this topic or any other topic.

3

After voir dire, the State moved to have Juror 18 dismissed for cause based on actual bias. The trial court granted its motion over a defense objection. The court noted Juror 18 had expressed he did not know if he could be impartial without knowing the case's facts. The court also noted Juror 18's discomfort with circumstantial evidence and need for two witnesses would run counter to the court's instruction on the equality between circumstantial and direct evidence.

Ms. Gibson testified for the State during the trial. Ms. Gibson repeatedly noted she suffered from anxiety and had to be asked to slow down during her answers by the prosecutor.

During her testimony, Ms. Gibson made three references to Mr. Riendeau's criminal history. The first came when the prosecutor asked Ms. Gibson whether she had spoken with Mr. Riendeau after he had been booked into the jail:

> [Prosecutor:] Okay. And did you have conversations with him while he was in the jail?
>
> [Ms. Gibson:] Conversations after he went to jail?
>
> [Prosecutor:] Yes.
>
> [Ms. Gibson:] He—yeah. We had a lot to discuss because we lived together for eight months and we shared bills. *So he was going to go away for a long time because he has a record as we all know*. And so he wasn't trying—
>
> [Prosecutor:] Okay.

4

[Ms. Gibson:] —to go, you know, coerce me in any way or nothing. We were dealing with what we were going to do with the car and the bills and the house and how I was going to make it.

[Prosecutor:] Okay. Okay. Slow down. We're doing [sic] to slow it down.

[Ms. Gibson:] Sorry. Tell my brain that.

RP (Apr. 15, 2019) at 235 (emphasis added). The second came when the prosecutor asked about Ms. Gibson's conversations with the victim advocate.

[Prosecutor:] Did you indicate to [the victim advocate] that you wanted the charges dropped?

[Ms. Gibson:] I indicated to her that—I knew the charges weren't going to get dropped. *Look at his history*. I mean, they came full force. So I'm sorry I'm not going where you want me to go with it.

[Prosecutor:] No.

[Ms. Gibson:] I'm answering your questions to the best of my ability. Sorry, I'm—when I see nonverbal, I just pick up on it. So I have anxiety. I'm sorry.

[Prosecutor:] I understand. Ms.—

[Ms. Gibson:] But yeah. I—ask your question again. I'm trying to answer it.

*Id*. at 239 (emphasis added). The final reference came during cross-examination, when defense counsel asked her what she and Mr. Riendeau had discussed during the phone call.

> [Defense Counsel:] Okay. What did—in your communication with him, were you talking about the dividing-up of property?
>
> [Ms. Gibson:] Yeah. Well—yeah, we were talking—because his mom—his mom was coming over to grab his things and I wanted to make sure, you know, his important things, *because he's got a record* and we weren't going to talk again, you know. That was it. I was just making sure that he got his things. I didn't want his things to just, you know—
>
> [Defense Counsel:] Did you discuss that you would continue living in the apartment?
>
> [Ms. Gibson:] Yes.

*Id*. at 253-54 (emphasis added).

Defense counsel did not object to Ms. Gibson's testimony or move to strike it. Instead, after Ms. Gibson's testimony, defense counsel moved for a mistrial on the basis of her references to Mr. Riendeau's criminal history. Alternatively, the defense asked for a curative instruction. The court opted for the latter. The court noted that neither party had elicited Ms. Gibson's statements; they were instead volunteered as part of nonresponsive answers to questions. When instructing jurors at the close of the case, the court informed

6

the jurors that they were "not consider that the defendant has been convicted of any crimes for any purpose." Clerk's Papers (CP) at 16.

The jury convicted Mr. Riendeau as charged. The trial court sentenced him to 60 months' imprisonment, the maximum of the standard range.

Mr. Riendeau appeals.

## ANALYSIS

*Dismissal for cause*

Dismissal of jurors for cause is reviewed for abuse of discretion. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 806, 425 P.3d 807 (2018) (plurality opinion). A trial court abuses its discretion when it dismisses a juror without an adequate legal basis, for an impermissible reason, or for a reason unsupported by the facts on record. *Id.*at 807

One legal basis for dismissal for cause is actual bias. RCW 4.44.170(2). Actual bias is a state of mind, on the part of a juror, "which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." *Id*.

Mr. Riendeau claims the record does not demonstrate Juror 18 suffered from actual bias. We disagree. Juror 18 made clear his impartiality was conditional; it depended on whether the case involved allegations of abuse by someone suffering from mental illness.

Unbeknownst to Juror 18, the condition precedent to his ability to be fair was present in

Mr. Riendeau's case. During her testimony, Ms. Gibson claimed Mr. Riendeau's

misconduct was the manifestation of mental illness. This position was a well-established

part of Mr. Riendeau's case.[1] The trial court had adequate proof of actual bias. It did not

abuse its discretion by dismissing Juror 18.

*References to criminal history*

"A trial court should grant a mistrial when a trial irregularity is so prejudicial that

it deprives the defendant of a fair trial." *State v. O'Connor*, 155 Wn. App. 282, 288, 229

P.3d 880 (2010). When a trial court denies a mistrial motion, we review its decision for

abuse of discretion. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002). Our

standard is extremely deferential we will reverse the denial of a mistrial only if a trial

irregularity was so significant that no reasonable jurist would have agreed with the trial

court's disposition. *Id*.

The irregularity here was Ms. Gibson's references to Mr. Riendeau's criminal

history. While these comments were improper, the trial court had a tenable basis for

determining they did not jeopardize Mr. Riendeau's right to a fair trial. As noted by the

---

[1] In the probable cause affidavit, it was alleged that Mr. Riendeau tried to convince Ms. Gibson that "the only way anyone would listen to her and drop the charges is if she tells them that he is not on his meds and he needs mental health treatment." CP at 4.

trial court, Ms. Gibson's comments were not the result of intentional misconduct. *See State v. Gamble*, 168 Wn.2d 161, 178, 225 P.3d 973 (2010) (unintentional irregularities less serious than intention). They were somewhat cumulative of other evidence, given the jury's awareness that Mr. Riendeau was in custody for assault. *Id.* 178-79 (prejudice is lessened when improper evidence is cumulative). And the comments were brief and undetailed, thereby reducing their inherent prejudice. Given these circumstances, the modest degree of prejudice caused by Ms. Gibson's statements was adequately addressed by the trial court's curative instruction. *Id.* at 179 (curative instruction may offset prejudice).

Mr. Riendeau claims the repeated nature of Ms. Gibson's comments heightened their prejudice. We are unmoved. Although repeated, Ms. Gibson's comments remained vague. Moreover, Mr. Riendeau could have remedied any repetitive impact by objecting and asking that the witness be admonished. Given the favorable nature of Ms. Gibson's testimony, Mr. Riendeau's attorney likely decided against this approach for tactical reasons. This would be understandable, but it does not provide a basis for relief on appeal. "[T]he defense should not be allowed to second-guess its own tactical decision by an after-the-fact objection." *Rodriguez*, 146 Wn.2d at 271.

*Statement of additional grounds for review*

Mr. Riendeau has filed a statement of additional grounds for review, alleging the prosecuting attorney labored under a conflict of interest and has engaged in vindictive conduct. These allegations refer to facts outside the record. They therefore must be raised through a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.

10