SEALED

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>DAWN RENEE ROLFE,<br><br>                    Appellant. | No. 83432-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — A jury convicted Dawn Renee Rolfe of three counts of conspiracy to commit murder with firearm enhancements and one count of unlawful possession of a firearm. On appeal, Rolfe claims that her three counts of conspiracy to commit murder violate double jeopardy. She also raises evidentiary issues and ineffective assistance of counsel. We agree that the multiple conspiracy convictions violate double jeopardy, requiring us to vacate two of the counts. We affirm the remaining count and remand for resentencing.

## FACTS

Dawn and Richard Rolfe[1] had been married for more than 25 years. Richard left Rolfe in January 2019, and moved to his mother's 23 acre property. In April of that year, Richard began dating Stacy Peabody. Peabody moved in with Richard a few months later.

Rolfe had hoped that she and Richard would get back together. Rolfe

---

[1] We refer to Richard Rolfe by his first name simply for the purpose of clarity due to the fact that he and Appellant share the same last name.

Citations and pin cites are based on the Westlaw online version of the cited material.

became very angry when she discovered that Richard had a girlfriend. Her financial situation deteriorated and she blamed Richard for her difficulties. Rolfe grew increasingly angry and resentful.

One day, over drinks with her friend and co-worker, Brenda Mortensen, Rolfe explained that she wanted to kill Richard, his mother, and Peabody. Rolfe said she had been planning for a couple of months. She wanted to find someone to carry out the murders to look like a home invasion, but was willing to do it herself if necessary.

Mortensen alerted police and agreed to help with the investigation. Mortensen met with Rolfe to offer assistance in obtaining an untraceable firearm and recorded their conversation. The police arrested Rolfe when she went to Mortensen's house to pick up the gun. The State charged her with one count of second degree unlawful possession of a firearm and three counts of attempted murder in the first degree with firearm enhancements and three charges of conspiracy to commit murder in the first degree with firearm enhancements in the alternative.

During trial, the jury heard approximately three hours of recordings Mortensen made of her conversations with Rolfe. The State also introduced a recording of Rolfe's interview with Detective Lorenzo Gladson. Additionally, Rolfe, Richard, his mother, Peabody, Rolfe's son, and other police officers testified.

The jury acquitted Rolfe of the attempted first degree murder charges but convicted her of the three alternative charges of conspiracy to commit first

degree murder with firearm enhancements. The jury also convicted Rolfe of unlawful possession of a firearm. The court sentenced Rolfe to a standard range sentence of 398.25 months, including firearm sentencing enhancements.

ANALYSIS

Double Jeopardy

Rolfe claims that her multiple convictions for conspiracy to commit murder violate the constitutional protections against double jeopardy. The State concedes and we agree.

Under the Fifth Amendment of the United States Constitution, no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. 5. Additionally, article I, section 9 of the Washington State Constitution provides that "[n]o person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I § 9. The double jeopardy doctrine protects defendants from "being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense." State v. Linton, 156 Wn.2d 777, 783, 132 P.3d 127 (2006) as amended (June 19, 2006). Double jeopardy claims are questions of law that are reviewed de novo. State v. Hughes, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

The Washington Supreme Court has determined that for double jeopardy purposes, the unit of prosecution for conspiracy is "an agreement and an overt act rather than the specific criminal objects of the conspiracy." State v. Bobic, 140 Wn.2d 250, 266, 966 P.2d 250 (2000). A single agreement to commit

multiple crimes amounts to one violation of the conspiracy statute when each crime is a step in the advancement of the scheme as a whole. Bobic, 140 Wn.2d at 266. Here, the State concedes that under the controlling case law, Rolfe's actions support only one conviction for conspiracy. We accept this concession, vacate two of the convictions for conspiracy to commit first degree murder with firearm enhancements, and remand for resentencing.

<u>Improper Opinion</u>

Rolfe argues that she was denied a fair trial because the recording of her interview with Detective Gladson included improper opinions on her veracity, intent, and guilt. Rolfe failed to object to this evidence.

We may refuse to review any claim of error which was not raised in the trial court. RAP 2.5(a). As an exception to the rule, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3). "The defendant must demonstrate that '(1) the error is manifest, and (2) the error is truly of constitutional dimension.' " State v. Dillon, 12 Wn. App. 2d 133, 139–40, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020) (quoting State v. O'Hara, 167 Wn.2d 91, 217 P.3d 756 (2009)). This requires the defendant to identify a constitutional error and show how the error actually affected their rights at trial. State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

Rolfe alleges that Detective Gladson provided improper opinions that violated her constitutional right to a jury trial. "The right to have factual questions decided by the jury is crucial to the right to trial by jury." State v. Montgomery,

163 Wn.2d 577, 590, 183 P.3d 267 (2008). "The general rule is that no witness, lay or expert, may 'testify to his opinion as to the guilt of a defendant, whether by direct statement or inference.'" City of Seattle v. Heatley, 70 Wn. App. 573, 577, 854 P.2d 658 (1993) (quoting State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). When determining whether statements are impermissible opinion on guilt, courts consider the circumstances of the case including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. Heatly, 70 Wn. App. at 579. Expressions of personal belief as to the guilt of defendant, intent of the accused, or veracity of witnesses are improper opinion testimony. Montgomery, 163 Wn.2d at 591.

According to Rolfe, the improper opinions arose when the jury heard a recording of her police interview. The recording included a statement from Detective Gladson, "I believe that your intent was to see Richard, Stacy, and Penny all dead." Detective Gladson then indicated that he believed that Rolfe was intending to commit a triple homicide.

> DETECTIVE GLADSON: Did you ever watch a crime show where the wife gets dumped after 25-year marriage and that her -- her husband stands to inherit his mom's riches, or 23 acres, and all her jewelry, her --
> MS. ROLFE: [Indiscernible].
> DETECTIVE GLADSON: -- triple wide and leaves his wife high and dry and the wife plots to do a triple homicide? Did you ever see that episode?
> MS. ROLFE: No.
> DETECTIVE GLADSON: That's what just happened.
> MS. ROLFE: No, it didn't.

These exchanges both occurred during police interrogation. Courts have determined that testimony recounting similar statements made in the

police interrogation process are not expressions of personal beliefs amounting to improper opinion testimony.  See State v. Curtiss, 161 Wn. App. 673, 697, 250 P.3d 496 (2011); State v. Notaro, 161 Wn. App. 654, 661, 255 P.3d 774 (2011); State v. Smiley, 195 Wn. App. 185, 189-90, 379 P.3d 149 (2016).  The role of Detective Gladson's statements as an interrogation tactic rather than personal belief is clear where, as here, the jury heard the actual statements as made during the interrogation.

The recorded statements are not improper opinion testimony and therefore do not satisfy the manifest constitutional error exception to RAP 2.5(a).  We decline to address the merits of Rolfe's challenge to admission of this evidence.

### Ineffective Assistance of Counsel

Rolfe claims that her trial counsel was ineffective for failing to object to admission of the alleged opinion testimony.

For a successful claim of ineffective assistance of counsel, a defendant must establish both objectively deficient performance and resulting prejudice. State v. Emery, 174 Wn.2d 741, 754-55, 278 P.3d 653 (2012). Where ineffective assistance is predicated on a failure to object, the defendant must show that representation "fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted."  In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (footnotes omitted.  Courts engage in a strong presumption of effective representation.  State v. McFarland,

127 Wn.2d 322, 335, 899 P.2d 1251 (1995) as amended (Sept. 13, 1995). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Strickland, 466 U.S. 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant alleging ineffective assistance of counsel shows prejudice when there is a reasonable probability that but for counsel's error, the result of the trial would have been different. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563, 572 (1996).

Given the overwhelming evidence, there is no reasonable probability the outcome of the trial would have been different with an objection. In particular, the jury heard Mortensen's detailed testimony and listened to recordings of the conversations in which Rolfe plotted the murders. Rolfe cannot establish prejudice to support her ineffective assistance of counsel claim.

Motion for Mistrial

Rolfe claims the trial court erred by denying her motion for a mistrial in response to witness testimony suggesting evidence of other crimes.

Trial courts should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure a fair trial. State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). When determining if a trial irregularity is so prejudicial as to require a mistrial, we analyze the (1) seriousness of the irregularity, (2) whether the irregularity was cumulative of other admissible evidence, and (3) whether the court could cure the irregularity with an instruction to disregard the remarks. State v. Escalona, 49 Wn. App. 251, 254, 742 P.2d 190 (1987). We review a trial court's denial of a motion for mistrial for abuse of

discretion. Rodriguez, 146 Wn.2d at 269. "A trial court's denial of a motion for mistrial will be overturned only when there is a 'substantial likelihood' that the error prompting the request for a mistrial affected the jury's verdict." Rodriguez, 146 Wn.2d at 269, (internal quotation marks omitted) (quoting State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

When testifying, Richard was asked if he had much contact with Rolfe after he left her in January 2019. Richard responded, "Not really. A little bit at the beginning from a case that she was going through from when I – I left." Rolfe moved for a mistrial alleging the testimony violated the motion in limine prohibiting testimony about a prior arrest. The trial court concluded "there was no reference to really anything" and denied the motion for mistrial. When asked whether the parties wanted a curative instruction for the jury, Rolfe declined.

The trial court had ruled on a motion in limine to limit any testimony concerning a prior domestic violence charge against Rolfe. The court allowed testimony about the argument between Rolfe and Richard as long as "there's no direct reference to any assaultive behavior, and obviously no reference to any arrests that were made or charges filed." Richard's mention of his involvement in "a case" with Rolfe could be considered a violation of the motion in limine. However, Richard's statement was general and did not specify Rolfe's involvement in a criminal case or domestic violence case. No other witnesses testified similarly. The court offered to give a curative instruction, but Rolfe indicated that curative instruction would be counterproductive. The trial court's

assessment of the comment and resulting denial of the motion for a mistrial was not an abuse of discretion.

We vacate two of Rolfe's convictions for conspiracy to commit murder with firearm enhancements, affirm the remaining count, and remand for resentencing.

Smith, A.C.J.

WE CONCUR:

Coburn, J.